DOLORES L. ALBA, administratrix,[1] *vs.* RAYTHEON COMPANY.

Middlesex. April 5, 2004. - June 1, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Summary judgment. *Collateral Estoppel. Anti-Discrimination Law,* Handicap.

A Superior Court judge properly concluded that collateral estoppel barred a civil action brought under G. L. c. 151B which alleged that the defendant employer's failure reasonably to accommodate an employee with a handicap led to the employee's suicide where, in an earlier workers' compensation case, an administrative judge made factual findings on the same question of reasonable accommodations when deciding whether the employee's suicide was due to a mental or emotional disability caused by or arising from his employment. [840-845]

CIVIL ACTION commenced in the Superior Court Department on May 15, 1998.

The case was heard by *Janet L. Sanders,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James R. Tewhey* for the plaintiff.

*James F. Kavanaugh, Jr. (Stephen S. Churchill* with him) for the defendant.

*Shannon Liss-Riordan & M. Amy Carlin* for Massachusetts Employment Lawyers Association, amicus curiae, submitted a brief.

IRELAND, J. The plaintiff, the administratrix of the estate of her deceased husband, Santo J. Alba (Alba), appeals from a judgment entered in favor of Alba's former employer, the defendant, Raytheon Company (Raytheon). A Superior Court judge allowed Raytheon's motion for summary judgment, concluding that the plaintiff's claim of handicap discrimination under G. L.

---

[1] Of the estate of Santo J. Alba.

c. 151B is barred by the doctrine of collateral estoppel. On appeal, the plaintiff argues that the judge incorrectly decided the collateral estoppel issue, and also contends that she proffered sufficient evidence that Raytheon failed to provide reasonable accommodation to Alba to preclude summary judgment in favor of Raytheon. We transferred the case to this court on our own motion. Because we conclude that the judge did not err in concluding that the plaintiff's claims are barred by the doctrine of collateral estoppel, we affirm the judgment of the Superior Court.[2,3]

*Background.*

We summarize the facts, reserving certain details for discussion in connection with the specific issues raised. Raytheon hired Alba as a sheet metal foreman in its Bedford plant in 1988. His job responsibilities increased over the years due to the restructuring of Raytheon's work force, which required him to work longer hours. In March, 1994, Alba was hospitalized due to severe depression. He reported to his treating psychiatrists (who diagnosed him as also suffering from bipolar disorder) that he was under pressure at work. They recommended that he reduce his hours. There is some dispute as to what Raytheon was told when Alba returned to work in April, 1994. It is undisputed, however, that Alba was assured that his job was secure and that he would not be required to work more than forty hours per week. Raytheon contends that was all that was requested.

For the next fifteen months, Alba did not work more than forty hours per week. On May 15, 1995, Alba was temporarily assigned to a different area of Raytheon. There is some dispute whether this required him to assume responsibilities comparable to his work as a sheet metal foreman or imposed some additional responsibilities. However, Alba did not object to being reassigned. Later that day, Alba was found dead in a Raytheon shop, the victim of a self-inflicted head injury.

---

[2]Because of our ruling on the issue of collateral estoppel, we do not reach the plaintiff's argument that she presented sufficient evidence that Raytheon failed to provide reasonable accommodation to Alba to survive Raytheon's motion for summary judgment.

[3]We acknowledge the amicus brief filed by the Massachusetts Employment Lawyers Association.

Following Alba's death, the plaintiff filed a claim with the Department of Industrial Accidents (department) for benefits under G. L. c. 152, § 31 (granting benefits to a deceased employee's spouse) and § 33 (covering employee's funeral expenses). She also filed a charge of discrimination with the Massachusetts Commission Against Discrimination (commission). The claim before the department proceeded to a full hearing before an administrative judge in 1996. Following a six-day hearing, which included testimony from fifteen witnesses, the administrative judge dismissed the plaintiff's claim, determining that she was not entitled to benefits. The decision became final when the plaintiff failed to perfect her appeal to the department's reviewing board.

The plaintiff voluntarily withdrew her charge of discrimination filed with the commission, and commenced a civil action in the Superior Court against Raytheon and one of its managers, Daniel Harry Paras, on the theory that Raytheon failed reasonably to accommodate Alba's emotional handicap. In a three count complaint, the plaintiff, individually and as administratrix of Alba's estate, claimed that Raytheon discriminated against Alba in violation of G. L. c. 151B and G. L. c. 93, § 103; Paras, as Raytheon's manager, also discriminated against Alba in violation of the same statutes; and Raytheon's discrimination resulted in the plaintiff's loss of consortium. The parties stipulated to the dismissal of the count against Paras, and Raytheon moved to dismiss the two remaining counts under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). A Superior Court judge allowed Raytheon's motion with respect to the plaintiff's discrimination claim under G. L. c. 93, § 103, and her loss of consortium claim.[4] She denied Raytheon's motion with respect to the plaintiff's claim of handicap discrimination under G. L. c. 151B, concluding that a claim under G. L. c. 151B survived the death of the alleged victim.[5]

Raytheon then filed a motion for summary judgment on the

_____

[4]These rulings are not challenged in this appeal.

[5]Because of our ruling on the collateral estoppel issue, we need not address the parties' arguments concerning the survivability of claims under G. L. c. 151B. We note, however, that G. L. c. 151B itself is silent on the issue, and that G. L. c. 151B is not expressly referenced in the survival statute, G. L. c. 228, § 1. Given that survivability of discrimination claims may have

single remaining G. L. c. 151B claim, arguing that it had provided the only accommodation requested by Alba (namely that he work no more than forty hours per week); the plaintiff could not prove that Alba was a qualified handicapped person entitled to any accommodations; and the plaintiff was collaterally estopped, based on the proceedings before the department, from proving that Alba suffered any harm arising from his employment. Concerning Raytheon's first argument, the judge who considered the motion for summary judgment concluded that there was "enough in the materials . . . to raise a triable issue." The judge, however, granted Raytheon's motion on the ground that the plaintiff was collaterally estopped from pursuing her discrimination claim by certain findings that the administrative judge made in the plaintiff's workers' compensation case.[6] The judge stated:

> "Through six days of hearings and fifteen witnesses, [the plaintiff] attempted to show that her husband's suicide and the emotional problems which led to it were caused by an event or series of events occurring in the course of

important ramifications with respect to the policies of deterrence and remediation that underlie G. L. c. 151B, we commend the issue to the Legislature's attention.

[6] The judge noted that, before the department, the parties fully litigated whether Alba's suicide was due to a mental or emotional disability caused by or arising from his employment, an inquiry required under G. L. c. 152. In resolving this issue, the administrative judge made several subsidiary findings. First, he determined that, although Alba had been hospitalized for psychiatric problems in March, 1994, he returned to work with clearance from his physician and did not seek any accommodation or ask that his work be restricted in any way. Second, the administrative judge credited Paras's testimony that he was not aware that Alba had any problems prior to his March, 1994, hospitalization, and that, when informed about the hospitalization, Paras assured Alba that his job status was secure and that information about his condition would be kept confidential. Third, the administrative judge found that although Alba was assigned to a different area of the plant on the day of his suicide, he agreed to the assignment, which was temporary and did not involve an increase in his duties. Finally, the administrative judge adopted the opinion of a medical expert hired by Raytheon that there was "no substantial evidence in the medical records to indicate that any event or series of events in [Alba's] employment with Raytheon was the predominant contributing cause" of his suicide. The administrative judge concluded that Alba's death did not arise out of and in the course of his employment.

Alba's employment. In deciding against her, the [administrative judge] expressly addressed what Raytheon did or failed to do in dealing with Alba's psychological difficulties, and made findings on precisely the issues which are important to [the] plaintiff's case now before this [c]ourt. In particular, the [administrative judge] found that Alba did not request any special accommodation when he returned [to] work after his hospitalization (which was the first time that his supervisor became aware of Alba's problem), nor did he ask that his work be restricted in any way. Moreover, the [administrative judge] found that, on the day of his death, Alba was not given increased job responsibilities. These are precisely the issues which [the] plaintiff now contends are in dispute so as to make summary judgment inappropriate. Where those issues have already been fully litigated, however, [the] plaintiff should not be afforded the opportunity to try them all over again."

*Discussion.*

1. *Summary judgment standard.* The grant of summary judgment will be upheld on appeal when, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law. . . . [The appellate court] may consider any ground supporting the judgment." (Citations omitted.) *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). See *Champagne* v. *Commissioner of Correction,* 395 Mass. 382, 386 (1985) (appellate court not bound by ground relied on by Superior Court). The appellate court will "resolve" all evidentiary inferences in favor" of the nonmoving party. *Simplex Techs., Inc.* v. *Liberty Mut. Ins. Co.,* 429 Mass. 196, 197 (1999).

2. *Collateral estoppel.* The plaintiff argues that the judge erred in granting Raytheon's motion for summary judgment based on the doctrine of collateral estoppel. She maintains that the administrative judge's findings on the question of reasonable accommodation (see note 6, *supra*), were not essential to his determination that Alba's injuries did not arise out of and in

the course of his employment.[7] We disagree. We conclude that, in an action brought under G. L. c. 151B, a party is collaterally estopped from claiming that an employer's failure reasonably to accommodate an employee with a handicap led to the employee's suicide where, in an earlier workers' compensation case, an administrative judge made factual findings on the same question of reasonable accommodations when deciding whether the employee's suicide was due to a mental or emotional disability caused by or arising from his employment.

The judicial doctrine of collateral estoppel provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Martin* v. *Ring*, 401 Mass. 59, 61 (1987), quoting *Fireside Motors, Inc.* v. *Nissan Motor Corp. in U.S.A.*, 395 Mass. 366, 372 (1985). See *Jarosz* v. *Palmer*, 436 Mass. 526, 530-531 (2002). The purpose of the doctrine is "to conserve judicial resources, to prevent the unnecessary costs associated with multiple litigation, and to ensure the finality of judgments." *Martin* v. *Ring, supra.* The doctrine may be applied with respect to administrative agency determinations so long as the tribunal rendering judgment has the legal authority to adjudicate the dispute.[8] *Id.* "The guiding principle in determining whether to allow defensive use of collateral estoppel is whether the party against whom it is asserted 'lacked full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate

---

[7]The plaintiff further contends that any finding on accommodation requests is not preclusive because the department has no authority to make such a determination under G. L. c. 151B. The plaintiff asserts that the Superior Court judge's decision "has the effect of allowing [d]efendants to litigate discrimination claims [before] the [department]," and requires workers "to choose between a claim for workers' compensation and a claim for handicap discrimination."

[8]It is settled law that "[a] final order of an administrative agency in an adjudicatory proceeding . . . precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction." *Green* v. *Brookline*, 53 Mass. App. Ct. 120, 123-124 (2001), quoting *Tuper* v. *North Adams Ambulance Serv., Inc.*, 428 Mass. 132, 135 (1998).

the issue.' " *Id.* at 62, quoting *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 541 (1985).

Before applying the doctrine, a court must answer affirmatively four questions: (1) was there a final judgment on the merits in the prior adjudication; (2) was the party against whom estoppel is asserted a party (or in privity with a party) to the prior adjudication; (3) was the issue decided in the prior adjudication identical with the one presented in the action in question; and (4) was the issue decided in the prior adjudication essential to the judgment in the prior adjudication? *Martin* v. *Ring, supra* at 61-62. See *Green* v. *Brookline*, 53 Mass. App. Ct. 120, 123 (2001), and cases cited. There is no question that there was a final order on the merits by the department, and that the parties in both actions are identical. We must, therefore, consider whether the findings made by the administrative judge in the workers' compensation case were identical to the issues raised in the Superior Court, and if so, whether those findings were essential, or treated as essential, to the department's order.

a. *Identity of issues.* The parties do not dispute that, in the prior adjudication, the plaintiff had to prove that Alba sustained a physical or mental injury arising out of and in the course of his employment; that there was a causal connection between his employment, that injury, and his eventual suicide; and that due to the injury, Alba was of such unsoundness of mind as to make him not responsible for his act of suicide. See G. L. c. 152, § 26A. The plaintiff's contentions in the department proceedings were predicated on allegations that, as a result of Raytheon's refusal to make requested accommodations and its increasing Alba's job responsibilities, Alba suffered a work-related injury that led to his suicide. Following a six-day hearing, which included testimony from fifteen witnesses, as well as the review of medical evidence and psychiatric records, the administrative judge concluded that Alba's death did not arise out of and in the course of his employment, and dismissed the plaintiff's claim. In reaching this conclusion, he made several subsidiary findings (see note 6, *supra*), including the findings that Alba did not request any special accommodation or ask that his work be restricted in any way when he returned to work after his hospitalization (which was the first time that his supervisor

learned of Alba's problems), and that Raytheon did not increase
Alba's duties on the day of his death. For the purposes of preclu-
sion, the issues thus resolved by the administrative judge are
identical to the issues raised by the plaintiff in her G. L. c. 151B
claim.[9] See *Commissioner of the Dep't of Employment & Train-
ing* v. *Dugan,* 428 Mass. 138, 143 (1998) ("In some cases, even
if there is a lack of total identity between the issues involved in
two adjudications, the overlap may be so substantial that preclu-
sion is plainly appropriate").

The plaintiff's argument that the administrative judge's find-
ings should not be given preclusive effect because the elements
of a workers' compensation case are different from the elements
of a discrimination case is without merit. That the claims are
brought under different statutes is not controlling. Courts have
repeatedly applied the doctrine of collateral estoppel to a second
action asserting a different claim from the first. *Green* v.
*Brookline, supra* at 124-127. See *Corrigan* v. *General Elec.
Co.,* 406 Mass. 478 (1990); *Martin* v. *Ring, supra* at 61; *Fireside
Motors, Inc.* v. *Nissan Motor Corp. in U.S.A., supra* at 372.

b. *Necessity of contested issues to ruling in first adjudication.*
Massachusetts courts have "expand[ed] the applicability of
[collateral estoppel] to encompass certain findings not strictly
essential to the final judgment in the prior action . . . if it is
clear that the issues underlying them were *treated as essential*
to the prior case by the court and the party to be bound. Stated
another way, it is necessary that such findings be the product of
full litigation and careful decision." *Green* v. *Brookline, supra*
at 126-127, quoting *Commissioner of the Dep't of Employment
& Training* v. *Dugan, supra* at 144.[10] See *Jarosz* v. *Palmer,* 436
Mass. 526, 533-534 (2002). Although in both the *Dugan* and

---

[9]The plaintiff's claim of handicap discrimination in violation of G. L.
c. 151B is based on her contention that Raytheon did not make reasonable ac-
commodation for Alba's emotional disability. To prove her case, the plaintiff
must show that Alba was a "qualified handicapped person" capable of
performing the essential functions of his job with reasonable accommodation;
Alba requested such accommodation, and Raytheon refused to provide it; and,
as a result of this refusal, he suffered some harm. See *Cox* v. *New England
Tel. & Tel. Co.,* 414 Mass. 375, 381 (1993); G. L. c. 151B, § 4 (16).

[10]In *Green* v. *Brookline,* 53 Mass. App. Ct. 120, 126, 127 (2001), the court
concluded that the Civil Service Commission's decision that the town
terminated the plaintiff for "just cause" precluded the plaintiff from relitigat-

*Green* cases the issues were neither identical nor strictly essential to the prior litigation, the doctrine of collateral estoppel applied, because in both cases the party against whom the doctrine was being used defensively had a full and fair opportunity to litigate the issues the first time. See *Commissioner of the Dep't of Employment & Training* v. *Dugan, supra*; *Green* v. *Brookline, supra.*

Like the *Dugan* and *Green* litigants, the plaintiff had a full and fair opportunity to litigate, and did litigate, the relevant issues in the first proceeding. Although the administrative judge's findings regarding whether Raytheon made reasonable accommodation for Alba were subsidiary to the determination whether Alba suffered any injury in the course of his employment, they addressed the precise theory of work-related injury pressed by the plaintiff, i.e., that the employer's alleged failure to accommodate was what triggered the suicide. Those findings were "the product of full litigation and careful decision," *Green* v. *Brookline, supra*, and, therefore, should be treated as essential to that determination.[11] As such, all the elements for applying

ing, in a subsequent proceeding (where she alleged that the town terminated her in "bad faith" and sought workers' compensation benefits), the issue of "the town's bona fides with respect to personnel actions addressed in the prior adjudication." The court explained that the commission's finding that the town terminated the plaintiff for "just cause" was the "product of full litigation and careful decision." *Id.* at 126-127, quoting *Commissioner of the Dep't of Employment & Training* v. *Dugan*, 428 Mass. 138, 144 (1998). The court concluded, therefore, that "the essential, implicit issue whether the town exercised bad faith was . . . essential to the commission's decision." *Green* v. *Brookline, supra* at 127.

In *Commissioner of the Dep't of Employment & Training* v. *Dugan, supra* at 143-144, a clerk-magistrate, whom this court already had determined should be permanently removed from her position for deliberate misconduct, was precluded from "arguing any equal or lesser issues concerning her conduct or state of mind at a second adjudication" (an administrative proceeding in which the clerk-magistrate sought unemployment compensation benefits). The court noted that the "findings [of the hearing officer at a prior proceeding] were thus the product of full litigation and careful decision, and the issue of the defendant's state of mind correspondingly [should be] treated as essential" to the prior adjudication. *Id.* at 144.

[11]The plaintiff does not dispute the judge's conclusions that she had a full opportunity to litigate, and did fully litigate, the underlying issues in the department proceedings.

collateral estoppel are met. The judge correctly decided the issue.[12]

*Conclusion.*

For the reasons stated above, we conclude that the judge did not err in concluding that the plaintiff's discrimination action brought under G. L. c. 151B was barred by the doctrine of collateral estoppel.

*Judgment affirmed.*

---

[12]Additionally, the administrative judge's finding that Alba's suicide was not related to any employment-related event or series of events precludes the plaintiff from proving the causation element of her discrimination claim. See note 9, *supra.*