Roach, Christine M., J.
The plaintiffs, Michael Sadlowski (“M. Sadlowski or M.”), Jocelyn Sadlowski (“J. Sadlowski or J.’j and their daughter, Suzanne Sadlowski (“S. Sadlowski or S.’j (collectively “the Sadlowskis”), brought this action against the defendant, Louis Benoit (“Benoit”), a Leominster police officer, for events surrounding an allegedly invalid search of the Sadlowskis’ residence on August 23, 1996, which resulted in the arrest of S. Sadlowksi. The Sadlowskis’ claims include defamation, invasion of privacy, negligent and intentional infliction of emotional distress, false arrest, and violations of their civil rights under G.L.c. 12, §§ 11H, 1II.[1] Benoit has moved for summary judgment on all counts. Following a hearing on March 17, 2008 and review of all pleadings of record in both this and the federal proceeding, *208 Benoit’s motion is ALLOWED, and this matter is dismissed with prejudice.
Facts of Record
The facts of record viewed in the light most favorable to plaintiffs areas follows. OnAugust23, 1996, Benoit executed a search warrant at 85 Harvard Street, Leominster, Massachusetts, where plaintiffs lived. The search team was comprised of six uniformed and armed Leominster police officers and one state police officer with a drug-sniffing dog.
J., S., and a fourth family member Jeffrey Sadlowski were present at the residence during the search. While in the residence, Benoit threatened to tear S. Sadlowski’s bedroom apart if she did not show him the location of the drugs. In response, S. led Benoit into her bedroom and showed the drugs to him. While in her bedroom, Benoit dumped a tray of S.’s cosmetics onto the floor in front of her. S. was sixteen years old at the time of the search. Benoit’s actions traumatized her and caused her mental distress.
S. was arrested for possession of marijuana after Jeffrey Sadlowski indicated some of the marijuana found by the police belonged to her. She was handcuffed and placed in a police cruiser. S. was not read her Miranda rights at the time of her arrest. Her criminal case for possession of marijuana was continued without a finding with no plea pursuant to G.L.c. 276, §87.
J. Sadlowski sat in the kitchen while the officers searched her residence. To J., the search was very emotionally disturbing, the police officers were intimidating, and she felt deceived after the incident. After the search she was fearful of leaving the house and kept the door locked during the day and night due to her distress.
M. Sadlowski was not present during the search but returned to the residence at 5:00 p.m., after the search was complete. When he returned home, he saw that the house was a mess. The chairs, sofas and beds were pulled apart or overturned. Dresser drawers were removed, kitchen cabinets were open and the contents of each were on the floor. A bookcase was in disarray and some of its contents were on the floor. M.’s attache case and personal file cabinet were open and appeared to have been searched. M. suffered emotional distress due to the sight of the mess created by the police when they searched his home, and his knowledge of the intrusion by police into his personal effects. Although he was not present at the time of S.’s arrest, M. was emotionally scarred by the knowledge that his daughter was handcuffed, put in a cruiser, and then photographed and fingerprinted at the police station.
M. and J. Sadlowski subsequently applied to the Leominster District Court for the issuance of a criminal complaint against Benoit and other officers involved in the search. The basis of that complaint was that Benoit’s search of the residence was illegal, because it was pursuant to an invalid or non-official warrant. The Sadlowskis also asserted Benoit had provided false information in his affidavit in support of the issuance of the search warrant. M. and J.’s application for the issuance of criminal complaints was denied by the Clerk Magistrate, due to insufficient evidence. Justice Peter J. Kilmartin (“Justice Kilmartin”) of the Leominster District Court reviewed the Clerk Magistrate’s denial of the Sadlowskis’ application for criminal complaints and held a four-hour hearing on February 4, 1998, at Leominster District Court. During this hearing, Benoit testified that S. had been convicted. After this hearing, Justice Kilmartin affirmed the Clerk Magistrate’s decision and denied M. and J.’s application for criminal complaints.
The Sadlowskis then filed this civil action against Benoit. The action was removed by Benoit in September 1998 to United States District Court for the District of Massachusetts (Worcester) to address the federal question of the Sadlowskis’ claims pursuant to 42 U.S.C. §1983. Summary judgment was granted in favor of Benoit in the federal proceeding. The state claims were remanded to this court in March 2002. However, the pleadings were not returned from federal court until November 2006. (Paper No. 5 herein.)
Discussion
I. Standard of Review
Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006). A fact is material if it would affect the outcome of the case. A dispute of fact is genuine if the evidence would permit a reasonable fact finder to return a judgment for the non-moving party. Flesner v. Technical Communications Corp., 410 Mass. 804, 809 (1991).
Where as here the opposing party has the burden of proof at trial, Benoit must demonstrate, “by reference to materials properly in the summary judgment record, unmet by countervailing materials” that plaintiffs have no reasonable expectation of proving an essential element of their case. Carey, 446 Mass. at 278, citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Benoit may satisfy his burden either by submitting affirmative evidence that negates an essential element of Plaintiffs’ case against him, or by demonstrating that Plaintiffs have no reasonable expectation of proving an essential element of their case at trial. Flesner, 410 Mass. at 809. Benoit has done both. Plaintiffs may not defeat the motion merely by resting on the allegations and denials of their pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e); Ng Brothers Construction, Inc. v. Cranney, 436 Mass. 638, 644 (2002).
*209 II. Issue Preclusion
Benoit argues that the Sadlowskis are collaterally barred from challenging the legality of the search, as the result of the denial of issuance of criminal process against him pursuant to G.L.c. 218, §§32, 33 and 35 (see also Mass.Dist.Ct.R. 2(b)). The Sadlowskis had argued in that forum that Benoit’s search of their residence was illegal because it was pursuant to an allegedly invalid or non-official warrant. They make the same claim here.
The doctrine of issue preclusion, also known as collateral estoppel, prevents the re-litigation of an issue that has been decided in a prior adjudication. Heacock v. Heacock, 402 Mass. 21, 23, n.2 (1988). “The purpose of the doctrine is ‘to conserve judicial resources, to prevent the unnecessary costs associated with multiple litigation, and to ensure the finality of judgments.’ ” Alba v. Raytheon Co., 441 Mass. 836, 841 (2004), quoting Martin v. Ring, 401 Mass. 59, 61 (1987). To apply the doctrine, a court must determine that “(1) there was a valid and final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior litigation; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue in the prior adjudication was essential to the earlier judgment. Green v. Town of Brookline, 53 Mass.App.Ct. 120, 123 (2003).
A.Prior Adjudication as Valid and Final Judgment on the Merits
In order for a decision to be final, “there must have been available some avenue for review of the prior ruling on the issue.” Sena v. Commonwealth, 417 Mass. 250, 260 (1994). The Massachusetts District Court Department provides a right of appeal to a complainant dissatisfied with a clerk’s denial of his application for criminal complaint. Bradford v. Knights, 427 Mass. 748, 750-51 (1998), citing District Court Standard of Judicial Practice 3:21.
Here the Sadlowskis appealed the Clerk Magistrate’s denial of their application for the issuance of a criminal complaint against Benoit, and were provided a full (four-hour) hearing by a district court judge. In his written rulings, Justice Kilmartin stated that “all parties were given full opportunity to present: [a] such oral testimony as the parties chose to introduce; [b] such exhibits as- the parties chose to introduce; and [c] oral arguments.” (Justice Kilmartin’s Memorandum of Decision, Exhibit C-4 to Benoit’s Motion for Summary Judgment in the federal proceeding.) Justice Kilmartin also permitted limited cross-examination of the witnesses. (Id.) Under these circumstances, there was a final judgment on the merits.
B.Plaintiffs as Parties or in Privity
“(I)ssue preclusion requires that the party against whom issue preclusion is asserted in the present action was a party or in privity with a party to the prior adjudication.” TLT Const. v. A. Anthony Tappe & Assoc., 48 Mass.App.Ct. 1, 5 (1999). M. and J. filed the application for criminal process against Benoit in the Leominster District Court on February 14, 1997, and thus were plainly parties in the district court adjudication.
To establish S. was in privity with M. and J., there “has to be a ‘sufficient legal identity’ between the interest of the person allegedly represented and the prior litigant for the later claim to be precluded.” Mongeau v. Boutelle, 10 Mass.App.Ct. 246, 250 (1980) (citation omitted). See Boyd v. Jamaica Plain Co-Operative Bank, 7 Mass.App.Ct. 153, 158 (1979) (holding that the current party was “sufficiently identified” with the parties to the prior litigation). A “nonparty to a prior adjudication can be bound by it ‘only where [the nonparty’s] interest was represented by a party to the prior litigation.’ ” Massachusetts Property Ins. Underwriting Ass’n. v. Norrington, 395 Mass. 751, 754 (1985), quoting Mongeau, 10 Mass.App.Ct. at 249-50. While a parent-child relationship alone is insufficient to form the basis for issue preclusion, an independent finding of legal identity between the parties can establish privity. Rudow v. Fogel 376 Mass. 587, 589-90 (1978) (no legal identity between a father litigating in his own behalf in that case and the interests of his son in a later suit seeking a judgment that the land was held in trust for his benefit).
At the time of the prior adjudication, S. was a sixteen-year-old minor. M. and Vs application for criminal complaint alleged that pursuant to an illegal warrant, Benoit conducted an illegal search of the residence, where S., their daughter, also resided. Suzanne was aware that her parents were pursuing an application for a criminal complaint against Benoit. S’s interests with regard to the legality of the search conducted by Benoit were and remain identical to those of her parents for purposes of this litigation. M. and J. represented themselves and vigorously pursued their application for a criminal complaint. Under these circumstances, the court finds that S. through her parents had a full and fair opportunity to have her interest in the validity of the search warrant litigated in the first adjudication. S. was in privity with M. and J. for purposes of those proceedings.
C.Identical Issues of Fact
The factual issues determined by the Leominster District Court are identical to the factual contentions that form the basis of plaintiffs’ claim in this case that the search warrant was invalid. See Alba, 441 Mass. at 842-43; Comm’r of Dep’t of Employment & Training v. Dugan, 428 Mass. 138, 142 (1998). In both proceedings, plaintiffs’ cause of action relies on the same factual allegations to prove that the search warrant served at the Sadlowski residence on August 23, 1996 was invalid and, thus, the search of the residence was illegal. Dugan, 428 Mass. at 143-44 (“In some cases, *210 even if there is a lack of total identity between the issues involved in two adjudications, the factual overlap may be so substantial that preclusion is plainly appropriate”).
D. Issues of Fact Essential to the Judgment
The issues of fact must have been “treated as essential to the prior case by the court and the parly to be bound. Stated another way, it is necessary that such findings be the product of full litigation and careful decision.” Dugan, 428 Mass. at 143-44 (citation and emphasis omitted). As previously noted, M. and J. presented evidence and testimony in support of their contention that the search warrant was invalid and, hence, that the search was illegal. At the four-hour hearing, oral testimony was recorded, exhibits were admitted, oral arguments were heard and M. was “allowed to return to the witness stand numerous times to make additional points or add to or clarify and/or expand on his or another witness’ testimony.” (Justice Kilmartin’s Memorandum of Decision.) “(E)veiy participant, including [Michael] had every opportunity to submit whatever evidence the party desired to submit.” (Id.) Thus, M. and J. had a “full and fair opportunity to litigate” these factual issues at trial, and the factual findings of the district court served as the basis for its decision on the ultimate issue. See Alba, 441 Mass. at 844. That is, in denying M. and J.’s application for a criminal complaint against Benoit, Justice Kilmartin rejected their assertion that the search warrant was invalid and/or was not the one in possession of Benoit at the time of the search.
In sum, the court finds all of the prerequisites for issue preclusion exist in this case, and the question of the legality of the search cannot be relitigated more than ten years later. See Green, 53 Mass.App.Ct. at 123.[2]
III. Defamation
Plaintiffs allege that Benoit “under oath . . . defamed the character of S. Sadlowski by alleging that she was convicted [of drug possession] and this is false.” Benoit made this statement on February 4, 1998, during hearing on the criminal complaint. (Plaintiffs’ Amended Complaint, filed in the federal proceeding March 5, 2002.)
To prevail on a defamation claim, a plaintiff must “establish that the [defendant] published a false [non-privileged] statement about [plaintiff] to a third party that either caused [plaintiff] economic loss or was of the fype that is actionable without proof of economic loss . . . and the imputation of a crime is defamatory perse.” Phelan v. May Dept. Stores Co., 443 Mass. 52, 55-56 (2004) (footnote omitted). However, “[s]tatements made in the course of a judicial proceeding which pertain to that proceeding are ... absolutely privileged and cannot support a claim of defamation, even if uttered with malice or in bad faith.” Correllas v. Viveiros, 410 Mass. 314, 319 (1991); Hartford v. Hartford, 60 Mass.App.Ct. 446, 451-52 (2004).
Benoit’s statement was made while testifying in a criminal complaint hearing stemming from the search of the Sadlowski residence and the arrest of S. and J. Sadlowski. Accordingly, Benoit’s statements are absolutely privileged and cannot support a claim of defamation. Correllas, 410 Mass. at 319 (testimony during criminal trial is absolutely privileged and insufficient to support a defamation claim); Aborn v. Lxpson, 357 Mass. 71, 72 (1970) (defendant’s statements while testifying at probate court hearing “were pertinent to the judicial proceeding in which they were made and hence were absolutely privileged”). Benoit’s motion for summary judgment on plaintiffs’ defamation claim (Amended Complaint, para. 10) is GRANTED.
IV. Invasion of Privacy
Plaintiffs assert Benoit’s entry of the Sadlowski residence pursuant to an allegedly invalid warrant was an invasion of privacy in violation of the Massachusetts Privacy Act, G.L.c. 214, §1B. S. Sadlowski also contends that Benoit’s publication of her name in a police report of the incident, and his statement during the criminal complaint hearing that she was convicted of drug possession, were invasions of privacy. Amended Complaint at paras. 4, 10 and 11.
General Laws c. 214, §1B provides that a “person shall have a right against unreasonable, substantial or serious interference with his privacy.” To recover under the statute, the interference with a plaintiffs right of privacy must be substantial or serious, and also unreasonable. Schlesingeru. Merrill Lynch, Pierce, Fenner & Smith, 409 Mass. 514, 518 (1991); O’Connor v. Police Comm’r of Boston, 408 Mass. 324, 330 (1990) (“We think that it is highly unlikely that the Legislature intended to provide a right of action to a person whose privacy was substantially or seriously interfered with, but reasonably so”). Hence, “the statute would not apply to a search and seizure — clearly a serious and substantial interference with privacy — when it is performed pursuant to constitutional requirements and is otherwise reasonable.” Schlesinger, 409 Mass. at 518. As stated above, relitigation of the validity of the warrant and the subsequent search is precluded. Since Benoit and the other officers entered the Sadlowski residence under the legal authority of a valid search warrant, these facts do not support an invasion of privacy claim.
Benoit disclosed no private fact when he identified S. Sadlowski by name in the police report of the incident. “A person’s arrest must be recorded by the police, and that record is public information.” Jones v. Taibbi, 400 Mass. 786, 801 (1987). Benoit was privileged to recount in court the procedural facts as he knew them to be. As such, an invasion of privacy claim cannot be supported on this record. Benoit’s summary judgment motion on plaintiffs’ invasion of *211 privacy claims (Amended Complaint at paras. 4, 10, and 11) is GRANTED.
V. Emotional Distress
Plaintiffs allege they suffered emotional distress when Benoit used an allegedly invalid search warrant to authorize a search of their residence by seven police offers with guns and a drug sniffing dog. They allege that the residence was “ransacked” to “taunt and cause emotional distress." (Plaintiffs’ Memorandum on Plaintiffs’ Opposition to Defendant Benoit’s Motion for Summaiy Judgment, page 8.) Additionally, M. Sadlowski alleges he was “scarred for life . . . from the emotional feeling of his daughter being handcuffed, put in a cruiser, and then photographed and fingerprinted” as well as from the “ransacking” of his residence, the “intrusion” by police into his personal effects and “seeing the mess caused by the police when he returned home” the evening of the search. (Amended Complaint at para. 14.) J. Sadlowski alleges the search was “very emotionally disturbing,” the police officers were “intimidating” and that she felt “deceived” after the incident. (Affidavit of J. Sadlowski, February 19, 2008, Exhibit E to Paper No. 14.) She also states she was “fearful of leaving the house and kept the door locked day and night due to [her] distress . . .” (Id.). S. Sadlowski alleges Benoit’s actions were “traumatizing” and caused her mental distress when he “threatened ... to tear things apart” and committed his “dumping” of her cosmetics in front of her in her bedroom. (Amended Complaint at paras. 6 and 7; Affidavit of Suzanne Sadlowski, February 18, 2008, Exhibit D to Paper No. 14.)
A. Intentional Infliction of Emotional Distress
To prevail on a claim for intentional or reckless infliction of emotional distress, a plaintiff must show: “(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . . ; (2) that the conduct was ‘extreme and outrageous,’ was ‘beyond all possible bounds of decency’ and was ‘utterly intolerable in a civilized community’. . . ; (3) that the actions of the defendant were the cause of the plaintiffs distress . . . ; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature ‘that no reasonable man could be expected to endure it." Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976) (citations omitted).
Liability cannot be based on “mere insults, indignities, threats, annoyances, petty oppressions or other trivialities . . .” Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987) (citation omitted). Nor is it enough “that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort ...” Id. (citations and quotations omitted). Conway v. Smerling, 37 Mass.App.Ct. 1, 8-9 (1994) (“ ‘Outrageous’ is a word somewhat debased in current usage, but as employed in the Agís opinion it meant more than workaday insults, annoyances, or even threats and petty oppressions”). Taking the record in the light most favorable to plaintiffs, the court finds plaintiffs cannot meet the second and fourth prongs of this tort, and Benoit’s motion for summary judgment with respect to intentional infliction of emotional distress is GRANTED.
B. Negligent Infliction of Emotional Distress
The Sadlowskis allege negligent infliction of emotional distress against Benoit for his actions during the search, of their residence. Under the Massachusetts Torts Claim Act (“MTCA”), G.L.c. 258, §2, “(p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . .” It further states that the “remedies provided by this chapter shall be exclusive of any other civil action . . . and no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment . . .” Benoit is a police officer and was acting pursuant to a legal search warrant. He was a public employee acting within the scope of his employment. As Chapter 258 is the sole remedy for public employees’ negligence, Benoit cannot be held personally liable. Taplin v Chatham, 390 Mass. 1, 2 (1983); Pruer v. Clerk of the Superior Court in the County of Norfolk, 382 Mass. 309, 313 (1981); Parker v. Chief Justice for Administration and Management of the Trial Court 67 Mass.App.Ct. 174, 180 (2006).[3] His motion with respect to the negligent infliction of emotional distress claim (Amended Complaint, paras. 6-8 and 14) must be GRANTED.
VI. Wrongful Arrest
S. Benoit contends her arrest was false because: (1) it was based on evidence obtained during an allegedly illegal search based on an allegedly invalid warrant; (2) Benoit failed to read her Miranda rights to her; and (3) she was not convicted of the crime for which she was arrested.
A police officer may, without a warrant, arrest a suspect if he has probable cause to believe a crime had been or was being committed. The standard for probable cause to arrest has been defined as “more than mere suspicion but something less than evidence sufficient to warrant a convicti
*212 As stated above, relitigation of the validity of the warrant and the subsequent search is precluded, and the search was found to be lawful. The court may reasonably infer from this record that evidence seized as a result of the search was used in the probable cause determination to arrest S. Sadlowski. S’s possession of drugs and/or the location of drugs in her bedroom provided Benoit with probable cause to arrest her. The fact that she was not convicted of the crime thereafter has no bearing on the probable cause determination. See Storey, 378 Mass. at 321. Furthermore, Benoit’s failure to Mirandize S. does not vitiate the arrest. An arrest warranted by law cannot constitute false arrest. Dogett v. Hooper, 306 Mass. 129, 133 (1940). Benoit’s motion for summary judgment on the claim for wrongful arrest (Amended Complaint, para. 9) is GRANTED.
VII. Civil Rights Violations
Under the Massachusetts Civil Rights Act, G.L.c. 12, §§11(H), 11(1), a plaintiff must prove interference, or attempted interference, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or laws of Massachusetts through threats, intimidation or coercion. Threats are “acts or language by which another is placed in fear of injury or damage.” Delaney v. Chief of Police of Wareham, 27 Mass.App.Ct. 398, 409 (1989). Intimidation has been defined as “creation of fear to compel conduct” and coercion consists of “the active domination of another’s will.” Id.
M. Sadlowski was not at the residence during the search and, hence, could not have been the recipient of threats, intimidation or coercion from Benoit. Additionally, there is no evidence or allegation that J. Sadlowski’s rights were violated through threats, intimidation or coercion. Therefore, any claim under § 11 must be sustained through S. Sadlowski’s allegations that Benoit threatened to tear her room apart.
“Generally, by itself, a threat to use lawful means to reach an intended result is not actionable under § 11 ...” Sena, 417 Mass. at 263 (officers stated they would have a warrant the next time they saw plaintiff). See Pheasant Ridge Assocs. Ltd. Partnership v. Burlington, 399 Mass. 771, 782 (1987) (words reasonably understood only to express intention to use lawful means not actionable).
When police possess a valid search warrant, the search may include any area, place or container reasonably capable of holding the particular object that is the focus of the search. Commonwealth v. Willis, 398 Mass. 768, 774-75 (1986); Commonwealth v. Hawkins, 361 Mass. 384, 387 (1972) (during search of residence pursuant to a valid warrant to search for drugs, officers could open an envelope); Commonwealth v. Gabbidon, 17 Mass.App.Ct. 525, 533 (1984) (motion judge’s finding that a photograph album “was a reasonable place to look for a saw blade” was warranted by the evidence). As established by the now three factual findings, Benoit had a valid warrant to search the premises for drugs. The warrant gave him the legal authority to search any area, place or container reasonably capable of holding drugs. Benoit’s threats to use lawful means to search S. Sadlowski’s bedroom is not actionable under the Massachusetts Civil Rights Act, and Benoit is thus GRANTED summary judgment on any claim in the Amended Complaint which is based on this statute.
ORDER
Defendant Louis Benoit’s Motion for Summary Judgment is ALLOWED with respect to every possible cause of action pleaded in the Amended Complaint, and this action is DISMISSED WITH PREJUDICE.

 Plaintiffs’ federal civil rights claims were heard and resolved in the U.S. District Court for the District of Massachusetts (Worcester), Civil Action No. 98-40194 (“the federal proceeding”).

 U.S. Magistrate Judge Charles B. Swartwood, III likewise found in the federal proceeding, on February 15, 2002, that the issue of the validity of the search warrant was precluded by the state criminal complaint proceedings. The Report and Recommendation containing this finding was adopted by the District Court Judge on March 1, 2002. The order dismissing the case was appealed by Plaintiffs, and a Mandate affirming the dismissal issued March 15, 2003 from the United States Court of Appeals for the First Circuit.

 Even if the MTCA did not provide protection to Benoit individually, the Sadlowskis could not prove a negligent infliction claim. The tort of negligent infliction of emotional distress requires as a critical element physical harm to the plaintiff, manifested by objective symptomatology. Payton v. Abbott Labs., 386 Mass. 540, 557 (1982); Rodriguez v. Cambridge Housing Authority, 443 Mass. 697, 700-02 (2005) (“[w)e did not eliminate the physical harm requirement”). Thus, plaintiffs must provide “sufficient objective evidence of physical manifestation of mental distress to survive a summary judgment motion.” Sullivan v. Boston Gas Co., 414 Mass 129, 139 (1993). After more than a decade of litigation, this element is neither sufficiently pleaded nor proved.