Tucker, Richard T., J.
This is a legal malpractice action in which the plaintiff, Deborah B. Holmgren *217 (“Holmgren”), seeks damages from the defendant, Heaney & Small, LLP (“H&S”), for financial harm she suffered in separate litigation because her attorney, an H&S associate, allegedly failed to provide adequate representation in opposing a motion for a preliminary injunction that issued against Holmgren. The matter is before the court on H&S, motion for summary judgment. For the following reasons, the motion is ALLOWED in part and DENIED in part.
BACKGROUND
In spring 2005, Holmgren retained H&S to represent her and her late husband in connection with the sale of their residence at 241 Main Street in Millis, Massachusetts (“the Property”). Holmgren and her husband entered into negotiations with Brian Villa (“Villa”) regarding the sale of the Property, but were unable to reach an agreement. Villa filed a lawsuit against the Holmgrens to compel sale upon what he alleged were mutually agreed-upon terms.[1] In his complaint, Villa requested a preliminary injunction to prevent the Holmgrens from assigning, transferring or attempting to pass the Property beyond their control.
The Holmgrens were represented at the hearing by Thomas E. Sullivan (“Sullivan”), an H&S associate. It was his first appearance in Superior Court. He did not file a written opposition to Villa’s request for a preliminary injunction, nor did he introduce any affidavits, documents, or oral testimony on the Holmgrens’ behalf. On July 25, 2005, the Superior Court (Donovan, J.) granted Villa’s request. Soon thereafter, the Holmgrens fired H&S as counsel.
On January 4,2006, Holmgren moved to vacate the preliminary injunction or, in the alternative, to compel Villa to post a security bond. The Superior Court (Sikora, J.), denied the Holmgrens’ motion to vacate, but required that Villa post a $100,000.00 bond.[2]
On May 18, 2006, the Superior Court granted summary judgment against Villa, thereby dissolving the preliminary injunction against the Holmgrens. On June 27, 2006, the Holmgrens submitted a Request for the Assessment of Damages attributable to the Preliminary Injunction, to be charged against Villa’s bond. On June 28, 2006, Judge Fabricant ruled on the Holmgrens’ damages request. She found that “the injunction was wrongful in the sense that that term is used in Mass.R.Civ.P. 65,” and that, to the extent the Holmgrens could prove their damages, they were entitled to recover the following damages as a result of the wrongful injunction:
1. Costs and expenses incurred in accordance with Mass.R.Civ.P. 54(d) and (e).
2. Carrying costs for the Property for the time period the injunction was in place (July 25, 2005, through May 18, 2006).
3. Loss of use of funds they would have received from sale of Lots 2 and 3 to Thomas Roche/Roche Building Company for the time period the injunction was in place (July 25, 2005, through May 18, 2006).
4. Carrying costs for Lots 2 and 3, provided that they did not overlap damages awarded for loss of use of said parcels.
5. Diminution in value of property for the time period the injunction was in place (July 25, 2005, through May 18, 2006).
On October 30, 2006, after a hearing to assess damages, Judge Brady concluded that the Holmgrens had not proved their entitlement to damages from the delay in the sale of Lots 2 and 3 to Roche, as the mortgage lender’s decision not to go forward with the transaction was attributable to the lawsuit, rather than the injunction itself. Additionally, he concluded that the Holmgrens had not proved that they suffered a diminution in the market value of the Property during the period of the injunction, as there had been no expert testimony on the subject. Judge Brady awarded the Holmgréns $54,674.61 in carrying costs for the Property, as well as $2,175.00 in deposition costs pursuant to Mass.R.Civ.P. 54(e).
On June 27, 2008, Holmgren filed the instant malpractice action against H&S, alleging that H&S failed to represent the Holmgrens properly at the original hearing on the preliminary injunction and that Holmgren suffered damages as a result of H&S’ negligence. In this malpractice action, Holmgren seeks damages for:
1. Diminution in the value of the Property.
2. Legal fees incurred in the Villa litigation.
3. Tax penalties for early withdrawal of retirement funds.
4. Delay damages from the sale of Lots 2 and 3.
5. Ancillary travel costs incurred for travel related to the Villa litigation.
6. The decline of Mr. Holmgren’s health, brought on prematurely as a result of the preliminary injunction.
(Joint SOF, par. 22.)
H&S now moves for summary judgment on the grounds that Holmgren is collaterally estopped from relitigating the issue of whether the grant of the preliminary injunction at the outset of the Villa litigation was proper and, therefore, she cannot establish a causal link between the alleged malpractice and the issuance of the injunction. Further, H&S contends that Holmgren is collaterally estopped from relitigating the issue of damages resulting from the wrongful injunction in the Villa litigation and that, as such, Holmgren does not have any actionable damages in the present malpractice action.
DISCUSSION
The judicial doctrine of collateral estoppel provides that “(w]hen an issue of fact or law is actually litigated *218 and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.” Martin v. Ring, 401 Mass. 59, 61 (1987), quoting Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A., 395 Mass. 366, 372 (1985). Strict mutuality of parties is not required, and a nonparty may use collateral estoppel defensively against a parly to the original action who had a full and fair opportunity to litigate the issues in question. Id.
Before applying the doctrine, a court must answer affirmatively four questions: (1) was there a final judgment on the merits in the prior adjudication; (2) was the party against whom estoppel is asserted a party (or in privity with a party) to the prior adjudication; (3) was the issue decided in the prior adjudication identical with the one presented in the action in question; and (4) was the issue decided in the prior adjudication essential to the judgment in the prior adjudication? Alba v. Raytheon Co., 441 Mass. 836, 842 (2004), and cases cited.

1. Whether Holmgren is collaterally estopped from asserting that the preliminary injunction would not have been granted but for Sullivan’s malpractice.

To sustain her legal malpractice claim, Holmgren must show that (1) Sullivan failed to exercise reasonable care and skill in handling the matter; (2) she has incurred a loss; and (3) Sullivan’s negligence was the proximate cause of that loss. See Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., 25 Mass.App.Ct. 107, 111 (1987), and cases cited.
H&S suggests that a prerequisite to Holmgren’s claim that the preliminary injunction would not have entered if Sullivan had represented her competently is that she must establish that the preliminary injunction was legally and factually unsupportable. H&S argues, therefore, that Holmgren is collaterally es-topped from litigating her legal malpractice claim because Judge Sikora’s denial of the Holmgrens’ motion to vacate the injunction operates as a final judgment on the merits with respect to the Holmgrens’ claim that the preliminary injunction was improper. The court disagrees.
The fact that, in hindsight, a court may find a legally tenable justification for maintaining a preliminary injunction does not dictate the result that a preliminary injunction would necessarily have entered in the first instance. Therefore, notwithstanding the fact that Judge Sikora conducted a de novo review of Judge Donovan’s grant of the preliminary injunction, the court does not accept H&S’ contention that Judge Sikora’s denial of the motion to vacate forecloses Holmgren’s argument that, had Sullivan represented her and her husband competently, the injunction would not have entered.
Although the Holmgrens were afforded an opportunity to present additional evidence to Judge Sikora, it is not very difficult to determine that the assistance of more effective counsel from the outset would have yielded a more favorable result in front of Judge Donovan. In fact, Judge Sikora noted in his decision that the lack of a written record deprived his ruling of deference and that he had “serious questions . . . about the propriety of the preliminary injunctive order.” (Joint Ex., Tab 8.) He denied the motion to vacate based on a balancing of the relative harms and conditioned his order of injunctive relief by requiring that Villa post a substantial security bond. In light of his clear reservations about the propriety of the in-junctive order, however, it is likely that he would have ruled differently had the issue come before him in a different procedural posture. Therefore, although total identity of the issues is not required, the court does not find substantial overlap between Judge Sikora’s ruling that there was sufficient legal basis for preserving the injunctive order and the relevant issue in this case — whether the preliminary injunction would have entered in the first instance had Sullivan performed capably. See Alba, 441 Mass. at 842-43.
The court also concludes that Judge Sikora’s decision was not sufficiently essential to the outcome of the Villa litigation to invoke collateral estoppel here. See id. at 843-44. Although strict essentiality is not required where the issues have been fully litigated and carefully decided, the court cannot say that Holmgren had “a full and fair opportunity to litigate the issues the first time” when it appears from the record that Sullivan’s initial failure to defend against the injunction influenced the entire proceeding and caused Judge Sikora to express misgivings about the propriety of the injunctive order that he elected to uphold. See id. Accordingly, the court rejects H&S’ argument that Holmgren is collaterally estopped from establishing the causation element of her legal malpractice claim.

2. Whether Holmgren is collaterally estopped from litigating issues relating to damages flowing from the preliminary injunction.

H&S also argues that Holmgren cannot proceed on her legal malpractice claim because she has already been awarded the full complement of damages that she is legally entitled to recover as a result of the issuance of the preliminary injunction. In this malpractice action, Holmgren seeks damages for: (1) diminution in the value of the Property; (2) legal fees incurred in the Villa litigation; (3) tax penalties for early withdrawal of retirement funds: (4) delay damages from the sale of Lots 2 and 3; (5) ancillary travel costs incurred for travel related to the Villa litigation; and (6) the decline of Mr. Holmgren’s health, brought on prematurely as a result of the preliminary injunction.
In his assessment of damages attributable to the wrongful injunction in the Villa litigation, Judge Brady *219 awarded the Holmgrens $54,674.61 In carrying costs for the Property and $2,175.00 in deposition costs pursuant to Mass.R.Civ.P. 54(e). He specifically found that the delay in the sale of Lots 2 and 3 was attributable not to the preliminary injunction, but to the underlying dispute itself. He also found that the Holmgrens had not timely offered expert testimony to establish the fair market value of the Property at the time the injunctive order was issued, noting that the Holmgrens’ submission of $760,000.00 as the proposed value was flawed because it was based on a proposed sale price that was part of imperfect negotiations.
Unlike the issues concerning the propriety of the injunctive order in the Villa litigation and the present malpractice action, certain issues concerning the damages attributable to the issuance of the injunctive order are identical to both proceedings and Holmgren had a full and fair opportunity to litigate, and did litigate, those specific issues during the course of the Villa litigation. See Alba, 441 Mass. at 844. In particular, Holmgren had the opportunity, and failed, to convince Judge Brady that she suffered delay and diminution damages attributable to the preliminary injunction. While the damages sought in both proceedings flow from different legal contexts — one involving a wrongful injunction under Mass.R.Civ.P. 65 and the other involving a negligence claim — the central theme in each case is the harm that Holmgren suffered as a result of the preliminary injunction. She may not now re-litigate the relationship between the injunction and her alleged delay and diminution damages simply because the focus has shifted to her attorney’s role in the issuance of the injunction. Judge Brady’s findings in this respect are conclusive against Holmgren, even though the present action is based on a different claim. See Martin, 401 Mass. at 61.
H&S may not, however, rely on Judge Brady’s assessment of damages in the Villa litigation as representing the full panoply of damages available to the Holmgrens as a result of H&S’ alleged legal malpractice. The award in the Villa litigation was limited to consideration of the damages to which the Holmgrens were entitled under Mass.R.Civ.P. 65 and was based on Judge Fabricant’s decision outlining the scope of recoverable damages under that rule. Accordingly, although there may be considerable overlap between the facts relevant to the determination of damages in the Villa litigation and those relevant to a determination of damages in the instant malpractice action, the court concludes that collateral estoppel does not apply categorically to bar the Holmgrens from seeking damages from H&S in excess of the $54,674.61 plus deposition costs awarded against the bond in the Villa litigation.[3]
In sum, H&S is not entitled to summary judgment on the ground that Holmgren will be unable to prove recoverable damages stemming from the alleged malpractice. Instead, in the event that Holmgren prevails on her malpractice claim, Judge Brady’s assessment of damages will be preclusive only insofar as Holmgren contends that she suffered delay and diminution damages as a proximate result of H&S’ negligence.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment be DENIED.

The case was filed in Norfolk Superior Court as Civil Docket No. 05-1203 (“the Villa litigation”).

Judge Sikora wrote: “Unfortunately no written reasoning accompanied the enhy of the injunction. That omission deprives me of guidance and the ruling of deference. Accordingly I have addressed the issues de novo or upon a clean slate. I have serious questions about the ultimate merits of the lawsuit and about the propriety of the preliminary injunctive order. However, I will maintain the order in place . . .” (Joint Ex., Tab 8.)

For example, Judge Fabricant based her determination that the Holmgrens were not entitled to consequential damages for early withdrawal of retirement funds on her conclusion that such damages were not within Villa’s contemplation in the underlying dispute. H&S may not rely on this determination to foreclose consideration of such damages in the instant malpractice action, as Judge Fabricant made no findings as to what the parties to the legal representation at issue in this action contemplated or could otherwise have foreseen. The same logic applies to Holmgren’s request for legal fees, as Judge Fabricant rejected this request based on her observation that such damages are not ordinarily recoverable under Mass.R.Civ.P. 65.