MICHAEL COTE *vs.* RICHARD M. LEVINE[1] & others.[2]

No. 99-P-756.

Suffolk. April 5, 2001. - August 31, 2001.

Present: JACOBS, LENK, & KANTROWITZ, JJ.

*Real Property,* Condominium. *Condominiums,* Management, Derivative suit. *Rules of Civil Procedure.*

An owner of a condominium unit, seeking redress for wrongs allegedly done to the condominium association, did not conform to the dictates of Mass. R. Civ. P. 23.1, 365 Mass. 768 (1974), in bringing a derivative suit against the condominium's board of trustees, where, even if demand on the trustees was excused as futile, the condominium unit owner failed to allege with particularity why demand on the remaining unit owners was excused; consequently, partial summary judgment in favor of the condominium's board of trustees was mandated in the circumstances. [442-443]

CIVIL ACTION commenced in the Superior Court Department on June 30, 1995.

The case was heard by *Barbara J. Rouse,* J., on motions for summary judgment, and entry of a separate and final judgment was ordered by her.

*Cameron C. Pease* for the plaintiff.
*Timothy G. Kenneally* for Edward Sottile, Jr., & another.
*Peter L. Freeman* for Richard M. Levine.

KANTROWITZ, J. The issue to be decided is whether or not the plaintiff, the owner of a condominium unit, conformed to the dictates of Mass.R.Civ.P. 23.1, 365 Mass. 768 (1974), in bringing a derivative suit against the condominium's board of trustees. We agree with the motion judge that he did not and affirm her decision.

---

[1]Individually and as trustee of the Courtyard at King Square Condominium Trust.

[2]Edward Sottile, Jr., and Jerome Winegar as trustees of the Courtyard at King Square Condominium Trust.

*Background.* The plaintiff, Michael Cote, is the owner of a unit at the Courtyard at King Square Condominiums (Courtyard). The Courtyard, located at 336 Adams Street in the Dorchester section of Boston, was created by a master deed on January 30, 1990. The property was owned by the 336 Adams Street Realty Trust. Richard Levine and Charles H. Mandell, in their capacity as trustees of the 336 Adams Street Realty Trust, developed the condominiums at the Courtyard. They appointed themselves as the trustees of the Courtyard pursuant to the declaration of trust.

Levine and Mandell's venture was financed by the First Trade Union Savings Bank (First Bank). The Courtyard was to consist of forty-eight residential units to be built in two phases; only twenty-eight units had been built at the time the plaintiff brought this action. The sale of the majority of the units to independent third parties was financed by First Bank.

The initial board of trustees (initial board) consisted of Levine and Mandell. Their term was to expire, according to the trust instrument, upon the earlier of the following events: "(a) 120 days after seventy-five (75%) of the total number of units in both phases of the Condominium have been conveyed to unit purchasers; or (b) three (3) years following the conveyance of the first unit." From the record before us, it is not clear when the initial board dissolved or who took over afterward. Nevertheless, we can ascertain that from February 22, 1995, until April 22, 1995, Levine was the sole trustee.[3] On April 22, 1995, Jerome Winegar and Edward Sottile, Jr.,[4] were elected as trustees. Sottile was an agent of First Bank.

Prior to Sottile and Winegar becoming trustees, the plaintiff made over ten requests to review the books, accounts, and records of the Courtyard. Despite the fact that the declaration of trust for the Courtyard provided for the right to view such records, the plaintiff's requests were repeatedly refused. On April 22, 1995, the plaintiff, frustrated with the lack of cooperation,

---

[3]This was contrary to the provisions of the trust instrument which provided that after the term of the initial board, there would be not less than three and no more than seven natural persons as trustees.

[4]The date Sottile became trustee was not provided in the record. It was given to us at oral argument.

decided to conduct an audit at his own expense pursuant to his rights under G. L. c. 183A, § 10. The plaintiff contends that in retaliation for his request to conduct the audit, the defendants scheduled a special meeting of the unit owners for May 13, 1995, to decide whether to charge the plaintiff for the cost of the audit. The plaintiff attempted to cancel the meeting and sent a letter to the other unit owners asking them if they agreed that the special meeting should not be held.[5] The meeting nonetheless went forward. Sottile did not attend, but provided Levine with thirteen proxies on behalf of First Bank. As a result of the meeting, the plaintiff was sent a bill for $2,660 for the accounting expenses incurred by the Courtyard in connection with his audit. The plaintiff "appealed" the $2,660 assessment in a letter to the trustees dated May 13, 1995.

*The allegations.* The plaintiff brought a derivative and personal action against the defendants, trustees of the Courtyard. In his amended complaint, the plaintiff alleged, in count I, that the three trustees — Levine, Sottile, and Winegar — breached their fiduciary duty by (1) not making books and records available for review; (2) charging a retaliatory assessment to the plaintiff as a result of his request to review the books; (3) depositing a substantial amount of condominium funds into Levine's own account; (4) making over $8,000 in cash disbursements unsupported by vendor invoices; (5) violating the declaration of trust by failing to have three trustees for a substantial period of time; (6) failing to hire an adequate manager for the Courtyard; (7) violating the declaration of trust by having one of the trustees, i.e., Levine, manage the Courtyard for longer than one year without the unanimous consent of the unit owners; and (8) adopting a condominium budget in bad faith and in excess of their authority.

In count II, the plaintiff alleged Levine breached the management agreement that he entered into with the trustees by (1) failing to provide adequate maintenance to the Courtyard; (2) charging an excessive management fee for services allegedly rendered; and (3) failing to disclose financial information.

In count III, the plaintiff alleged a G. L. c. 93A violation

[5]The letter was dated May 5, 1995, and also mentioned the plaintiff's frustration with the inability to see the financial records.

against Levine, as managing agent of the Courtyard, by (1) depositing over $46,000 of insurance proceeds owed to the condominium association into his own bank account; (2) collecting condominium fees and depositing them into his own bank account; (3) refusing to allow the plaintiff to inspect the condominium's financial records; and (4) charging the plaintiff $2,660 for the auditing information.

Count IV alleged that Levine, as managing agent, "acted to conspire, deceive, mislead, cheat and defraud" the plaintiff and the other unit owners by not allowing them to audit the condominium's financial records.

Lastly, count V alleged that the trustees committed fraud by conspiring, deceiving, misleading, cheating, and defrauding the plaintiff and other unit owners from the inception of the Courtyard until such time as a "Retaliatory Assessment [was] levied against Plaintiff for his requests to review the books and records of The Courtyard."[6]

The defendants moved for summary judgment, which the judge allowed as to count II and in part as to counts I, III, IV, and V. The judge ruled that where the plaintiff alleged that he suffered personal financial loss, i.e., the $2,660 assessment, summary judgment was improper.[7] However, where the plaintiff was seeking redress for wrongs allegedly done to the condominium association, he had to proceed derivatively. Since the plaintiff had failed to follow the procedure set forth in Mass.R. Civ.P. 23.1, partial summary judgment in favor of the defendants was mandated. The parties' motion for a separate and final judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), was allowed.

---

[6]In response to count V, the defendant Levine offered, in his motion to dismiss and/or for summary judgment, to pay the plaintiff the $2,660 assessment "*if* the Verified Complaint is dismissed in its entirety" (emphasis in original).

There was one other count, a declaratory judgment action as to the validity of proceeding with Phase II of the development, which is not the subject of this appeal.

Lastly, in the plaintiff's amended complaint, he alleged that Levine still owed First Bank a portion of the original construction loan and that First Bank did not pay outstanding condominium fees prior to foreclosing on thirteen units in violation of G. L. c. 183A, § 6.

[7]This portion of the judgment has not been appealed by the defendants.

*Condominiums.* A condominium, once created, is run by a corporation, trust, or unincorporated association. G. L. c. 183A, §§ 8(*i*), 10. The members of the association are the unit owners. G. L. c. 183A, § 1. The governing body of the association is the equivalent of the board of directors of a corporation, and the unit owners are the equivalent of shareholders. In this case, the governing body consisted of the trustees.

Section 10(*c*)(4) of G. L. c. 183A mandates that the financial records of the association be kept available to any unit owner.[8] The plaintiff was clearly thwarted in his efforts to see the financial records of the organization.

*Derivative suits.* A derivative suit is brought where the management of an association of condominium unit owners has failed or refused to redress a wrong committed against that association. See Smith & Zobel, Rules Practice § 23.1.1 (1974). The wrong complained of must have been committed against the association itself, not the members of the association. The members are affected simply as individual owners of units in the condominium. See *ibid.*

Where the "plaintiffs are, in essence, seeking recovery of funds properly owing to the unit owners' association," they can only assert their claims through a derivative suit. *Cigal* v. *Leader Dev. Corp.*, 408 Mass. 212, 219 (1990). Thus, in this case, where the plaintiff had alleged individual damages in addition to derivative damages, the motion judge properly differentiated between the two causes of action and denied summary judgment on as much of the complaint as alleged individual damages. Contrast *Bernstein* v. *Chief Bldg. Inspector & Commnr. of Falmouth, ante* 422, 426-427 (2001).

Mass.R.Civ.P. 23.1 governs how a derivative action is brought.[9] Of significance in the case at bar is the requirement in

---

[8]"Such records . . . shall be available for reasonable inspection by any unit owner . . . during regular business hours and at such other times as may be provided in the agreement between the . . . managing agent and the organization of unit owners. Access to said records shall include the right to photocopy said records at the expense of the person or entity making the request." G. L. c. 183A, § 10(*c*)(4).

[9]Rule 23.1 states: "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated as-

rule 23.1 that the plaintiff allege with particularity the efforts, if any, made to obtain the action he desires from the trustees and why such demand failed or was not made. Rule 23.1 further requires that if the trustees failed to respond to his demand, the plaintiff must allege with particularity any demands he made to obtain the action desired from the shareholders or why such demand was not made.

The Supreme Judicial Court explained the demand requirement in *Harhen* v. *Brown*, 431 Mass. 838 (2000). In that case, the plaintiff, a policyholder of an insurance company, made a demand on the board of directors to bring an action against members of the company's management team who, it was alleged, had acted illegally. The court held that prior to filing a derivative action on behalf of a corporation, a plaintiff must establish that all other available means of relief had been exhausted. The plaintiff could do this by making a demand on the corporation's board of directors to prosecute the litigation. See *id.* at 844. "However, if a majority of directors are alleged to have participated in wrongdoing, or are otherwise interested,[10] a plaintiff may seek to have the demand on the board excused as futile." *Ibid.*

---

sociation, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified by oath and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law from one who was a stockholder or member at such time. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association."

[10]The Supreme Judicial Court adopted, in *Harhen, supra* at 843 n.5, the definition of "interested" as found in 1 ALI Principles of Corporate Governance: Analysis and Recommendations § 1.23 (1994):

"The Principles of Corporate Governance define the term 'interested' as follows:

"(a) A director . . . or officer . . . is 'interested' in a transaction or conduct if either:

"(1) The director or officer, or an associate of the director or officer, is a party to the transaction or conduct;

The plaintiff must allege facts to show that the directors are interested. *Ibid.* If a majority of the board are interested, demand is excused. If the plaintiff's demand was refused and the directors were disinterested, the plaintiff must show that the demand

---

"(2) The director or officer has a business, financial, or familial relationship with a party to the transaction or conduct, and that relationship would reasonably be expected to affect the director's or officer's judgment with respect to the transaction or conduct in a manner adverse to the corporation;

"(3) The director or officer, an associate of the director or officer, or a person with whom the director or officer has a business, financial, or familial relationship, has a material pecuniary interest in the transaction or conduct (other than usual and customary directors' fees and benefits) and that interest and (if present) that relationship would reasonably be expected to affect the director's or officer's judgment in a manner adverse to the corporation; or

"(4) The director or officer is subject to a controlling influence by a party to the transaction or conduct or a person who has a material pecuniary interest in the transaction or conduct, and that controlling influence could reasonably be expected to affect the director's or officer's judgment with respect to the transaction or conduct in a manner adverse to the corporation.

"(b) A shareholder is interested in a transaction or conduct if either the shareholder or, to the shareholder's knowledge, an associate of the shareholder is a party to the transaction or conduct, or the shareholder is also an interested director or officer with respect to the same transaction or conduct.

"(c) A director is interested in an action within the meaning of Part VII, Chapter 1 (The Derivative Action), but not elsewhere in these Principles, if:

"(1) The director is interested, within the meaning of Subsection (a), in the transaction or conduct that is the subject of the action, or (2) The director is a defendant in the action, except that the fact a director is named as a defendant does not make the director interested under this section if the complaint against the director:

"(A) is based only on the fact that the director approved of or acquiesced in the transaction or conduct that is the subject of the action, and

"(B) does not otherwise allege with particularity facts that, if true, raise a significant prospect that the director would be adjudged liable to the corporation or its shareholders."

was wrongfully refused. See *ibid.*

If the directors refuse the plaintiff's demand, the plaintiff must then present the demand to all of the remaining shareholders. See *id.* at 848. The exception to this requirement occurs where demand would be futile because the other shareholders are interested or where the number of other shareholders is very large. See *id.* at 849.

*Discussion.* In his amended verified complaint, the plaintiff stated that "[t]here was no need to make demand upon the Defendants to bring suit against the Defendants with regard to Plaintiff's allegations because of the adversity of the Defendants which controlled The Courtyard At King Square Condominium Trust at the commencement of this litigation." The only adversity that can be found in the record relates to Levine's repeated refusals to allow the plaintiff access to the records. The plaintiff never made a demand on all the trustees to view the records. They were, however, aware of his desire to do so from his letter dated May 13, 1995.

The plaintiff has alleged sufficient facts in his complaint to show that Levine was an interested trustee. See *Harhen, supra* at 843 n.5 (a director or officer is interested if he is a party to the transaction or conduct). Sottile, as trustee, represented the interests of First Bank. Therefore, if the plaintiff's allegation that the bank had failed to pay outstanding condominium fees prior to foreclosure is taken as true (see note 6, *supra*), then Sottile may also be viewed as interested. See *ibid.* (a director or officer is interested where that "director or officer is subject to a controlling influence by a party to the transaction or conduct or a person who has a material pecuniary interest in the transaction or conduct, and that controlling influence could reasonably be expected to affect the director's or officer's judgment with respect to the transaction or conduct in a manner adverse to the corporation"). Since the majority of the trustees may be deemed interested, demand was excused.[11]

However, even if demand on the trustees was excused, the plaintiff still had to make a demand on the remaining unit own-

---

[11]What is troubling is that the plaintiff's amended complaint did not allege with particularity why demand was not made on the trustees. We are drawing

ers unless they too were interested or their number very large. The plaintiff does not allege that the remaining unit owners were interested; indeed, he states that they were "independent" parties. The record fails to mention the number of unit owners involved. It does state that as of July, 1998, the Courtyard consisted of twenty-eight units and indicates that First Bank had foreclosed on thirteen of the units. The amended complaint is barren as to the efforts made to secure the approval of his fellow condominium owners, or why securing their approval was futile.

Because the plaintiff failed to allege with particularity why demand was excused on the condominium owners, partial summary judgment was properly granted to the defendants.[12]

*Judgment affirmed.*

---

inferences from the record, which we are generally loathe to do, and ordinarily, will not do in future cases, given the clear requirements of rule 23.1.

[12]We note that although the issue was not raised until the summary judgment stage, it was proper for the judge to rule on the sufficiency of the pleading. See *Pupecki* v. *James Madison Corp.*, 376 Mass. 212, 218-219 (1978). See also *Jackson* v. *Stuhlfire*, 28 Mass. App. Ct. 924, 925 (1990).