## ERIC JOHNSTON vs. ALAN L. BOX & others.[1]

Suffolk. December 4, 2008. - April 13, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Corporation,* Stockholder's derivative suit. *Practice, Civil,* Dismissal, Complaint, Motion to amend. *Moot Question. Collateral Estoppel. Judgment,* Amendment.

The dismissal of a Federal lawsuit, in which the plaintiff shareholders made demand on a corporation to respond to allegations of stock option backdating, did not render moot another shareholder's derivative action against the same corporation in Superior Court, as a demand made by any one stockholder does not necessarily make moot the demand excused or futility claim of any other stockholder [575-577]; moreover, because the issue in the Federal lawsuit was different from the issue presented in the Superior Court action, the doctrine of collateral estoppel did not bar the plaintiff in the Superior Court action from litigating the issue presented there [577].

In a shareholder's derivative action, the judge (applying Delaware law) correctly dismissed the complaint on the ground that the plaintiff had not first made demand on the board of directors of a corporation to proceed with a lawsuit in response to allegations that former and current officers and directors had colluded in the improper backdating of stock options, where the plaintiff failed to meet his burden of demonstrating particularized facts that created a reasonable doubt that, as of the time the complaint was filed, a majority of the board of directors could have properly exercised its independent and disinterested business judgment in deciding whether to institute such a lawsuit [578-582]; moreover, the judge did not abuse his discretion in denying the plaintiff an opportunity to amend his initial complaint, where the plaintiff chose not to amend his complaint as a matter of right when that opportunity arose, and did not follow the customary steps for seeking amendment as a matter of discretion [582-583]; further, the judge did not err in denying the plaintiff's motion to amend or alter the judgment of dismissal to be without prejudice, where, under the facts of the case, the filing of an amended complaint at that juncture likely would have been futile as a matter of law [583-584].

CIVIL ACTION commenced in the Superior Court Department on May 24, 2006.

[1] Arnold L. Chavkin; Steven B. Dodge; Raymond P. Dolan; James S. Eisenstein; J. Michael Gearon, Jr.; Fred R. Lummis; Randall Mays; Steven J. Moskowitz; Pamela D.A. Reeve; Bradley E. Singer; Thomas H. Stoner; James D. Taiclet, Jr.; Douglas C. Wiest; Maggie Wilderotter; and Joseph L. Winn. American Tower Corporation was named in the complaint as a nominal defendant.

A motion to dismiss was heard by *Allan van Gestel,* J., and a motion to alter or amend the judgment was also heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Eric L. Zagar,* of Pennsylvania (*Tara P. Kao & James H. Miller,* of Pennsylvania, with him) for the plaintiff.

*Roger A. Lane* (*Courtney Worcester & Matthew Martel* with him) for Special Litigation Committee of the Board of Directors of American Tower Corporation.

*Douglas S. Brooks,* for Joseph L. Winn, was present but did not argue.

*Kurt Wm. Hemr,* for Arnold L. Chavkin, was present but did not argue.

*Meredith A. Wilson,* for Alan L. Box & others, was present but did not argue.

*Marbree D. Sullivan,* for Steven B. Dodge, was present but did not argue.

CORDY, J. In this appeal, we consider whether a complaint in a shareholder derivative action is sufficient under Delaware law to survive a motion to dismiss. Specifically, we must determine whether its particularized factual allegations create a reasonable doubt that the board of directors (board) of American Tower Corporation (ATC) was capable of exercising independent and disinterested judgment in responding to allegations that former and current officers and directors had colluded in the improper backdating of stock options. If the factual allegations are sufficient, the plaintiff stockholder, Eric Johnston, properly is entitled to proceed with the derivative action without having first made demand on the board to act on ATC's behalf, that is, the action may proceed on a "demand excused" basis. If they are insufficient, as the motion judge found, the complaint is properly dismissed. We also consider whether the judge, on dismissing the complaint, should have done so without prejudice, and permitted the plaintiff to file an amended complaint.

Before reaching these issues, however, we must determine whether Johnston's appeal from the judgment of dismissal has been rendered moot or is otherwise barred by the actions of unrelated plaintiffs in a parallel case filed in the Federal court, or by the ruling of the Federal judge dismissing that case.

We conclude that the appeal is neither moot nor barred by matters occurring in the Federal litigation, and affirm the judgment of dismissal entered below by the Superior Court judge.

1. *Background.*[2] On May 19, 2006, ATC issued a press release stating that it had begun reviewing past stock option grants issued by the ATC board, and that it had received a letter of formal inquiry from the Securities and Exchange Commission (SEC). On May 24, 2006, Johnston, an ATC shareholder, filed a derivative suit against sixteen current and former officers or directors of ATC, alleging that those individuals colluded in granting or receiving improperly backdated ATC stock options. The complaint included allegations that Johnston had not made demand on the board to institute the action because such a demand would have been futile where the board was "incapable of making an independent and disinterested decision to institute and vigorously prosecute the action."

In support of the allegation that demand on the board would have been futile, the complaint alleged that four of the seven members of the then existing board, defendants James D. Taiclet, Jr.; Fred R. Lummis; Raymond P. Dolan; and Pamela D.A. Reeve, were not disinterested or independent,[3] for various reasons. With respect to Dolan, it was alleged that he had been a member of the compensation committee in 2003 and had participated in the granting of stock options backdated to November 17, 2003. Having participated in that action, the complaint alleged that Dolan was "substantially likely to be held liable for breaching his fiduciary duties," and was therefore not a disinterested board member.[4] The basis for the complaint's allegations that the November 17 stock option grants were backdated was its further allegation that, ten days after the "purported" grant date (November 17), the stock price was 8.2 per cent higher than it was on

[2] The information set out in this section is drawn from the pleadings as well as the memorandum and order of the motion judge dismissing the complaint.

[3] The other three members of the board of directors (board) were not named as defendants, nor were any allegations made in the complaint with regard to their disinterest or independence. The motion judge therefore presumed them to be disinterested, and the plaintiff has not argued otherwise on appeal.

[4] A recounting of the complaint's allegations with respect to why the three other defendant board members were not disinterested or independent is unnecessary to the resolution of this case.

that "purported" date, and that this fit an "extraordinary pattern" noted in five other stock option grants (made prior to Dolan's tenure on the compensation committee and the board) that were dated "just before a substantial rise in ATC's stock price." Thus, by inference, all of the stock option grants were backdated after the price of the stock had risen using hindsight to choose the date of a lower periodic stock price, to the detriment of ATC.

In response to the lawsuit, ATC formed a special litigation committee (SLC) to investigate the backdating claims. On July 12, 2007, the SLC issued a report concluding that several members of the ATC board had granted and received improperly backdated stock options.[5] On July 16, 2007, ATC moved to dismiss Johnston's claim, with prejudice, for failing to make a presuit demand on the board without legal excuse.

In the memorandum in support of its motion to dismiss, ATC argued that the complaint failed to allege facts sufficient to create a reasonable doubt that a majority of the seven member board was disinterested, and focused with particularity on the adequacy of the allegations regarding Dolan.[6] Specifically, ATC challenged the lynchpin to the plaintiff's allegations regarding Dolan, that the November 17, 2003, stock option grants were backdated. ATC pointed out that SEC records conclusively established (as a matter of public record) that on November 19, 2003 (two days after the grant), the recipients of the stock options filed Form 4 statements reporting their repetitive grants to the SEC.[7] This fact,

---

[5]The special litigation committee (SLC) report did not conclude that the November 17, 2003, grant date was chosen "with the benefit of hindsight." Rather, the report implied that the November 17 stock option grants demonstrated an improved grant process within the American Tower Company (ATC). First, management proposed a general compensation plan; the compensation committee considered and approved that plan; management implemented it; and the compensation committee subsequently ratified grants issued in accordance with the plan. The SLC also concluded that each of the November 17 grants was within the range detailed in the compensation plan, and that the officers who received them filed forms with the SEC on November 19, 2003, disclosing the grants.

[6]The memorandum also challenged the adequacy of factual allegations regarding board members James D. Taiclet, Jr., and Pamela D.A. Reeve and maintained that the "Plaintiff [had] failed to allege any particularized facts from which the Court could infer that *any* of the six grants were backdated" (emphasis in original).

[7]"Section 16(a) of the Securities Exchange Act of 1934 requires that all

ATC argued, "negate[d] any reasonable inference that this grant was backdated," and specifically negated the only basis for that allegation in the complaint. Consequently, there was no factual basis in the complaint for any doubt as to Dolan's disinterest or independence.

The plaintiff's memorandum in opposition to the motion to dismiss, dated September 14, 2007, argued, with respect to Dolan, that, notwithstanding the November 19, 2003, SEC filings, the compensation committee did not actually execute a "unanimous written consent form" finally approving the November 17, 2003, grant of stock options until February 12, 2004, in violation of various accounting rules.[8] Therefore, there was sufficient evidence of culpability on Dolan's part in a scheme to backdate stock options as to cast a reasonable doubt on whether he was a disinterested and independent director.[9]

The plaintiff's memorandum also included a footnote requesting that the court grant him "leave to replead in the event the Court grants any part of Defendants' motion to dismiss." The footnote stated that permission to replead would be "particularly appropriate here," noting the report of the SLC "as having come to light following the filing of the Complaint." The plaintiff did not further indicate what a repleaded complaint would include based on the information in the SLC report, nor did the plaintiff move to amend the complaint between the date the

directors and officers selling securities in their own corporation file a Form 4, Statement of Changes in Beneficial Ownership." *Ronconi* v. *Larkin*, 253 F. 3d 423, 437 (9th Cir. 2001), citing 15 U.S.C. § 78p(a) (2000). "The Sarbanes-Oxley Act requires that all stock option grants be reported to the SEC within two days. The Form 4 . . . satisfies this requirement . . . . [R]esearchers believe that late Form 4 filings can be a sign of stock option backdating." *Winters* v. *Stemberg*, 529 F. Supp. 2d 237, 243 n.3 (D. Mass. 2008).

[8]Prior to July 1, 2004, G. L. c. 156B, § 59, repealed by St. 2004, c. 178, § 47, allowed a board of directors to take action without a formal meeting if there was unanimous written consent. General Laws c. 156D, § 8.21 (*a*), inserted by St. 2003, c. 127, § 17, which superseded that section, now contains the relevant provision.

[9]The plaintiff's memorandum in opposition to the motion to dismiss made extensive use of the findings in the SLC report to support the plaintiff's claim that various ATC officers and directors received backdated option grants. However, the memorandum made no reference to any option grant other than the November 17, 2003, grant alleged in the complaint, in which Dolan participated as a member of the compensation committee. There are no allegations that Dolan ever received any backdated option grants.

SLC report was issued (July 12, 2007) and the judge's ruling dismissing the complaint on October 25, 2007.

In his memorandum of decision dismissing the complaint, the motion judge took note of the SEC Form 4 filings made on November 19, 2003, disclosing the November 17, 2003, grants. He also noted that the stock price dropped between those dates, and concluded that it would make little sense to "backdate a stock option to a time when the adjusted closing price was higher than on the date of the grant." Therefore, there was no reason to believe that the stock option grant was improper. The judge further concluded that, without the backdating of the November 17 grant, the complaint failed to allege an impropriety for which Dolan might be liable. Insofar as the complaint made no allegations against three of the board members, the judge held that the plaintiff failed to meet his burden of pleading facts with particularity showing that a majority of the board was not disinterested or independent. Consequently, he granted ATC's motion to dismiss for failure to make presuit demand. The dismissal was, as ATC had sought, with prejudice, and without further leave to amend.

Johnston then filed a motion requesting that the judge alter or amend the judgment "so as to be without prejudice and with leave to amend" his complaint pursuant to Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974).[10] The judge denied the motion, reasoning that his prior decision had been carefully considered, and involved a "time-consuming effort"; Johnston had never sought to amend the complaint prior to the decision; and allowing an amendment would merely lead to a new ATC motion to dismiss, and a new analysis of the same issues. He concluded,

---

[10]Rule 15 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 761 (1974), states: "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served and prior to entry of an order of dismissal or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, which ever period may be the longer, unless the court otherwise orders."

"This kind .of let's-see-what-the-judge-does-on-the-motion-attacking-present-complaint-first,-and-then-move-to-amend-later approach is not favored in a busy Session of the Superior Court," noting that this reasoning was consistent with the reasoning in *White* v. *Panic*, 783 A.2d 543, 555-557 (Del. 2001).[11] Johnston filed a notice of appeal, and we transferred the case to this court on our own motion.

2. *Preliminary questions*. ATC has moved to dismiss Johnston's appeal as moot because following the dismissal in this case other plaintiffs in a parallel Federal lawsuit (In re Am. Tower Corp. Sec. Litig., No. 06-10933 MLW [D. Mass.]) made demand on ATC to respond to the allegations of stock option backdating. ATC essentially contends that a demand made by any stockholder makes moot the demand excused or futility claim of any other stockholder. The proposition is not supported by Delaware law, under which the matter must be resolved. See *Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-109 (1991).

"Where a demand has actually been made, the stockholder making the demand concedes the independence and disinterestedness of a majority of the board to respond." *Rales* v. *Blasband*, 634 A.2d 927, 935 n.12 (Del. 1993) (*Rales*). See *Spiegel* v. *Buntrock*, 571 A.2d 767, 775 (Del. 1990) (*Spiegel*) ("By making a demand, a stockholder tacitly acknowledges the absence of facts to support a finding of futility"). Under Delaware law, if one plaintiff makes a demand, then coplaintiffs who are parties to the same suit are precluded from continuing to proceed on the basis of demand futility. *Stotland* v. *GAF Corp.*, 469 A.2d 421, 422-423 (Del. 1983) (*Stotland*).

In support of its claim that this principle extends beyond coplaintiffs in the same lawsuit and that a demand made by a

---

[11]In *White* v. *Panic*, 783 A.2d 543, 555-556 (Del. 2001), the Supreme Court of Delaware reasoned that dismissal with prejudice is particularly appropriate in the context of derivative complaints. It explained that this policy "encourages the plaintiffs to investigate their claims before filing a complaint so that they have a basis at the outset to make particularized factual allegations in the complaint. In contrast, if plaintiffs were granted leave to amend deficient complaints as a matter of course after an unsuccessful appeal, plaintiffs would have a reduced incentive to ensure that their original complaints are complete from the start." *Id*. It also encourages plaintiffs to use tools such as the statutory right of a shareholder to inspect the corporation's books and records before filing a complaint. *Id*. at 556-557.

stockholder litigant in an entirely separate lawsuit precludes all similar lawsuits from proceeding on a demand futility basis, ATC cites *Stotland, supra*; Boeing Co. *vs.* Shrontz, Civ. A. No. 11273 (Del. Ch. April 20, 1992) (Boeing Co.); *Spiegel, supra* at 775; and *Stepak* v. *Addison*, 20 F.3d 398 (11th Cir. 1994) (*Stepak*). The proposition is unsupported by those cases, all of which essentially involve a stockholder litigant (or colitigant) attempting to proceed on a demand excused basis while having also made a demand. Collectively, they stand for the same commonsense proposition that when one plaintiff, who is a party to a suit, makes a demand on the board, both the plaintiff and any co-plaintiffs are precluded from arguing demand futility.[12] See *Stepak, supra*; Boeing Co., *supra*; *Spiegel, supra*; *Stotland, supra*.

Courts that have addressed factual circumstances similar to this case have reached the conclusion "that a demand made by a nonparty does not bar . . . [a] plaintiff from pleading demand futility." See *In re FirstEnergy Shareholder Litig.*, 320 F. Supp. 2d 621, 626 (N.D. Ohio 2004) (although dismissal "may be reasonable, even just" when plaintiff or coplaintiffs make demand, "[t]he same equities . . . do not weight in favor of one shareholder being able to bind all other shareholders based on a demand of which the other shareholders had no knowledge"); *Matter of Prudential Ins. Co. Derivative Litig.*, 282 N.J. Super. 256, 273-274 (Ch. Div. 1995) (demand filed by two shareholders after derivative action filed and demand futility alleged did not render futility analysis moot, where shareholders were not named plaintiffs or represented by counsel for named plaintiffs).

In Avacus Partners, L.P. *vs.* Brian, Civ. A. No. 11001 (Del. Ch. 1990),[13] a judge of the Court of Chancery had occasion to address the issue in a case similar to the one before us. In that case, a nonparty made a demand on the board after the plaintiff

[12]Once a demand has been made, absent a wrongful refusal, the stockholder's ability to initiate a derivative suit is terminated. *Zapata Corp.* v. *Maldonado*, 430 A.2d 779, 784 (Del. 1981). If a stockholder's demand is refused by the board of directors, the board's decision may be subject to judicial review according to the traditional business judgment rule. *Spiegel* v. *Buntrock*, 571 A.2d 767, 776 (Del. 1990).

[13]"Delaware permits the citation of unpublished decisions as precedent." *First Marblehead Corp.* v. *House*, 473 F.3d 1, 8 n.7 (1st Cir. 2006), citing *New Castle County* v. *Goodman*, 461 A.2d 1012, 1013 (Del. 1983).

filed a complaint pleading demand futility. *Id.* The board established a special committee to investigate the allegations, after which it made recommendations with respect to whether to take action on the challenged transactions. *Id.* The corporation argued that those facts proved that demand on the board would not have been futile. *Id.* The judge disagreed, however, reasoning that "the responses of the . . . board to another shareholder's demand is not sufficient to compel dismissal of [the plaintiff's] claims at this point." *Id.* We agree. ATC's motion to dismiss Johnston's appeal as moot is denied.

ATC also contends that the doctrine of collateral estoppel bars Johnston from further litigating the issue of demand futility, because the Federal District Court judge in the parallel ATC lawsuit, in dismissing the Federal plaintiffs' complaint, issued a final judgment, on the merits, that demand was not excused. We disagree.

In that case, the Federal judge granted ATC's motion to dismiss because the plaintiffs effectively conceded that the Federal complaint did not sufficiently allege that demand would have been futile. At the hearing, the plaintiffs chose not to argue that the allegations in their amended complaint were "sufficient to raise the required reasonable doubt concerning the disinterest and independence of [ATC's] board." The judge therefore concluded that the plaintiffs "essentially acknowledged that they have not satisfied the high standards for being excused from making a demand." The sole issue reached by the judge (and rejected) was whether ATC conceded the demand futility issue by creating a special litigation committee. That issue is different from the one we must address: whether the State complaint sufficiently alleges that the board in general, and Dolan in particular, were sufficiently disinterested to respond to a shareholder's demand to act on claims of stock option backdating. Because the issue decided in the Federal adjudication is not "identical with the one presented in the action in question," the doctrine of collateral estoppel does not apply. *Alba* v. *Raytheon Co.*, 441 Mass. 836, 842 (2004).[14]

---

[14]We also note that the doctrine of collateral estoppel applies only if "the party against whom estoppel is asserted [is] a party (or in privity with a party) to the prior adjudication." *Alba* v. *Raytheon Co.*, 441 Mass. 836, 842 (2004). Because the issues are not identical, we need not decide whether the Federal shareholder plaintiffs are in privity with Johnston.

3. *Adequacy of the complaint.* In shareholder derivative actions, the plaintiff's complaint must satisfy the requirements of Mass. R. Civ. P. 23.1, 365 Mass. 768 (1974). Under that rule, the complaint must plead "with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority . . . and the reasons for his failure to obtain the action or for not making the effort." *Id.* This is a higher standard than ordinary notice pleading. See *In re Sonus Networks, Inc., Shareholder Derivative Litig.,* 499 F.3d 47, 66 (1st Cir. 2007).

ATC is incorporated in Delaware, and the substantive requirements of the demand rule are governed by the law of the state of incorporation. *Kamen* v. *Kemper Fin. Servs., Inc.,* 500 U.S. 90, 108-109 (1991). A "cardinal precept" of Delaware law "is that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson* v. *Lewis,* 473 A.2d 805, 811 (Del. 1984), overruled on other grounds by *Brehm* v. *Eisner,* 746 A.2d 244, 253 (Del. 1998). The shareholder derivative action constitutes a narrow exception to this rule, and in limited circumstances "permits an individual shareholder to usurp control of the corporation in order to bring suit on behalf of the corporation against its officers and directors, as well as third parties." *Risberg ex rel. Aspen Tech., Inc.* v. *McArdle,* 529 F. Supp. 2d 213, 219 (D. Mass. 2008), citing *Kamen* v. *Kemper Fin. Servs., Inc., supra* at 95-96. The shareholder of a Delaware corporation may not usurp control without first demonstrating either that the board wrongfully refused to act on behalf of the corporation or that demand on the board would have been futile. *White* v. *Panic,* 783 A.2d 543, 550 (Del. 2001).[15]

In this case, the relevant inquiry then is whether the complaint

_____

[15]In contrast, Massachusetts substantive law, as recently amended, requires that demand be made in *all* derivative suits filed on behalf of Massachusetts corporations. G. L. c. 156D, § 7.42, inserted by St. 2003, c. 127, § 17 ("No shareholder may commence a derivative proceeding" until written demand is made and certain time periods have elapsed). The change to Massachusetts law traces back to 1989, when the American Bar Association section of business law proposed that States adopt a "universal demand requirement," eliminating the "futility" exception. See *Werbowsky* v. *Collomb,* 362 Md. 581, 611 (2001); Revised Model Bus. Corp. Act § 7.42 (2003). At least twenty-two States have now adopted universal demand by statute. See *Boland* v. *Engle,* 113 F.3d 706, 712 (7th Cir. 1997); *In re Guidant Shareholders Derivative*

sets out particularized facts creating "a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales, supra* at 934. To overcome ATC's motion to dismiss, Johnston must show that a reasonable doubt exists as to whether four of the seven members of the ATC board (at the time the complaint was filed) could have exercised independent and disinterested judgment in deciding whether to proceed with a lawsuit.

"The purpose of the distinction between interested and disinterested directors is to ensure that the directors voting on a plaintiff's demand can exercise their business judgment in the best interests of the corporation, free from significant contrary personal interests and apart from the domination and control of those who are alleged to have participated in wrongdoing." *Harhen* v. *Brown*, 431 Mass. 838, 843 (2000), citing *Rales, supra* at 936. Under Delaware law, a director is "interested" if he "has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders." *Pogostin* v. *Rice*, 480 A.2d 619, 624 (Del. 1984), rev'd on other grounds, *Brehm* v. *Eisner, supra.* The receipt of backdated stock options is a personal financial benefit that is sufficient to deem the director-recipient interested. *Conrad* v. *Blank*, 940 A.2d 28, 38 (Del. Ch. 2007).[16] Directors who have granted backdated options also have a "disabling interest," because they face a substantial likelihood of liability.

*Litig.*, 841 N.E.2d 571, 574 (Ind. 2006). As a result, in Massachusetts, there is no longer a futility exception to the demand requirement, even if the board members are not independent and disinterested. See *Forsythe* v. *Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 110 n.13 (D. Mass. 2006); *ING Principal Protection Funds Derivative Litig.*, 369 F. Supp. 2d 163, 170 (D. Mass. 2005). Several jurisdictions applying Massachusetts law have recognized the Massachusetts universal demand requirement. See, e.g., *Risberg ex rel. Aspen Tech., Inc.* v. *McArdle*, 529 F. Supp. 2d 213, 220 n.8 (D. Mass. 2008); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 877 n.6 (D. Md. 2005); Zucker *vs.* Federated Shareholder Servs. Co., No. 2:06CV241 (W.D. Pa. Mar. 5, 2007); Mintz *vs.* Baron, No. 05 Civ. 4904(LTS) (HBP) (S.D.N.Y. Sept. 19, 2006); In re Am. Mut. Funds Fee Litig., No. CV04-5593-GAFRNBX (C.D. Cal. Dec. 16, 2005); *In re Guidant Shareholders Derivative Litig., supra.*

[16]There is no claim that Dolan received any backdated option grants. See note 9, *supra.*

*In re Baxter Int'l, Inc., Shareholders Litig.*, 654 A.2d 1268, 1269 (Del. Ch. 1995).

We agree with the judge that Johnston's complaint failed to clear the bar required to demonstrate demand futility.

We begin, as did the Superior Court judge, with director Dolan. The judge noted that Johnston's complaint implicated Dolan in only one transaction: the November 17, 2003, option grant for which Dolan was a member of the ATC compensation committee. The complaint alleges that the price of ATC stock rose substantially ten days after the purported date of the grant. This fact, Johnston alleges in his complaint, gives rise to the inference that the grant date was chosen with the benefit of hindsight to capture a greater value for the recipients of the option.

The judge properly rejected this contention. On November 19, 2003, each of the alleged recipients of the November 17 grant filed an SEC Form 4 announcing that the grant had occurred. At the very most, then, the option could have been backdated by only two days. Even that proposition is undercut by the record, however, because the price of ATC stock dropped from $10.50 on November 17 to $10.41 on November 19. As the judge concluded, "No one would backdate a stock option to a time when the adjusted closing price was higher than on the date of the grant."

Johnston does not directly dispute the judge's assessment; rather, he proposes that Dolan is not disinterested because the November 17 grant "was not ratified [by] the Compensation Committee, of which Dolan was then a member . . . until nearly three months thereafter." That fact does not warrant Johnston's conclusion that Dolan is not disinterested. First, contrary to Johnston's implication, late ratification of an option grant is not the same as backdating. The purpose of backdating option grants (and the reason that they are improper) is to use hindsight for the purpose of selecting a low periodic stock price, thereby artificially increasing the option's value. That clearly did not happen with the November 17 grant. See *In re Openwave Sys. Inc. Shareholder Derivative Litig.*, 503 F. Supp. 2d 1341, 1349 (N.D. Cal. 2007) (timely filing of Form 4 "diminish[es] the ability to infer backdating from the allegations of plaintiffs' Complaint"). Second,

Johnston appears to concede that at most, this late ratification violates only "applicable accounting rules," not the ATC option grant plan. While a knowing violation of an option grant plan may be sufficient to excuse demand, see, e.g., *Ryan v. Gifford*, 918 A.2d 341, 354 (Del. Ch. 2007); *Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008), Johnston has not cited to any case (nor have we found one) for the proposition that a mere accounting discrepancy, without more, raises doubts about a board member's ability to respond to a demand with disinterested and independent business judgment. Only a *knowing* violation of positive accounting laws raises such a doubt, because it creates a substantial likelihood of personal liability. See *Desimone v. Barrows*, 924 A.2d 908, 915, 931-938 (Del. Ch. 2007).[17] Dolan's actions here, as pleaded in Johnston's complaint, do not create a sufficient likelihood of liability, and therefore do not raise a reasonable doubt as to Dolan's ability to respond to a demand.

On appeal, Johnston claims that the SLC report shows that Dolan was also involved in the backdating of option grants on November 12, 2003, and May 7, 2004, and that we should include option grants made on those dates in our analysis whether the complaint adequately alleged that Dolan was not a disinterested director. Those grants were not referenced in the initial complaint, in Johnston's memorandum in opposition to ATC's motion to dismiss, or, apparently, in his motion to amend or alter the judgment.[18]

On a motion to dismiss a shareholder derivative suit, "given the clear requirements of rule 23.1," courts will not ordinarily draw inferences from the record. *Cote v. Levine*, 52 Mass. App. Ct. 435, 442 n.11 (2001).[19] This case is no exception. Johnston filed his complaint on May 24, 2006. The SLC released its

---

[17]"The tax and accounting fraud that flows from acts of concealed options backdating involve clear violations of positive law. But even in such cases, there are important nuances about *who* bears responsibility when the corporation. violates the law, nuances that turn importantly on the state of mind of those accused of involvement" (emphasis in original). *Desimone v. Barrows*, 924 A.2d 908, 931 (Del. Ch. 2007).

[18]The November 12, 2003, and May 7, 2004, dates come from Johnston's main brief. In his reply brief, Johnston expands the backdated option grants in which he claims the SLC report implicates Dolan to include grants "dated" July 29, 2003; February 4, 2004; and February 23, 2004.

[19]The "court may consider documents referenced in [the] plaintiff's complaint

report, which included analysis of the option grants that Johnston now cites, on July 12, 2007. As noted, Johnston did not put the Superior Court judge on notice, either in a proposed amendment or a motion to amend, or in his opposition to the motion to dismiss, that his complaint was relying on (or intended to rely on) different transactions in which Dolan may have played a part, to establish doubt about his ability to exercise independent and disinterested judgment. This is the case even though Johnston had been provided with the SLC report and used it extensively in his opposition memorandum on other points.

In the alternative, Johnston argues that the judge should have permitted an amendment of the initial complaint. We review the question under the abuse of discretion standard. *R.W. Granger & Sons* v. *J & S Insulation, Inc.*, 435 Mass. 66, 79 (2001).

Johnston argues that Massachusetts employs liberal amendment rules, and that the motion judge abused his discretion in choosing not to follow those precedents. See, e.g., *Jessie* v. *Boynton*, 372 Mass. 293, 295 (1977). We disagree. Johnston chose not to amend his complaint as a matter of right after the SLC released its report and the ATC filed its motion to dismiss. See Mass. R. Civ. P. 15 (a). Even though specific concerns regarding the adequacy of the complaint as to Dolan were raised in ATC's motion to dismiss, Johnston made only a passing reference to amending the complaint in his opposition memoranda: a footnote on the last page containing no more than a general request to amend whatever the court might find to be defective. He did not follow the customary amendment steps, including filing a motion to amend "accompanied by a draft of a proposed amended complaint." *Nett* v. *Bellucci*, 437 Mass. 630, 645 (2002). At the very least, Johnston was required to "adequately describe the contemplated amendment in order for [the] court to determine the merits of the motion." *Id.* A single reference in a two-sentence footnote falls well short of that standard.

without converting [the] motion to dismiss into [a] motion for summary judgment." *Harhen* v. *Brown*, 431 Mass. 838, 840 (2000), citing *Shaw* v. *Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996). In this case, however, Johnston did not reference the SLC report in his initial complaint, as it had not yet been released. The SLC report was not "integral to or explicitly relied upon in the complaint," and need not be considered by the motion judge. *Shaw* v. *Digital Equip. Corp.*, *supra*.

We affirm the judgment dismissing the complaint for failure adequately to plead demand futility.

4. *Motion to alter and amend judgment.* Johnston also argues that the judge erred in denying Johnston's motion to amend or alter the judgment of dismissal to be without prejudice and to permit him to file an amended complaint. For the above reasons, we disagree.

Even were we to conclude that the judge should have dismissed the complaint without prejudice to the filing of an amended one, the filing of an amended complaint at that juncture would likely have been futile as a matter of law. Courts are not required to grant motions to amend prior complaints where "the proposed amendment . . . is futile." *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston,* 416 Mass. 269, 272 (1993). Here, Johnston's proposed complaint would again attempt to demonstrate that demand on the ATC board was excused. That endeavor, however, would be in vain. When a derivative complaint is dismissed as insufficiently pleaded and an amended complaint is filed, the plaintiff's demand futility argument is assessed as to the board in place at the time of the second filing. *Braddock* v. *Zimmerman,* 906 A.2d 776, 786 (Del. 2006). "A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint." *Id.* For the purposes of Mass. R. Civ. P. 23.1, the dismissed complaint would no longer be "validly in litigation," *Braddock* v. *Zimmerman, supra*; therefore, the demand futility test would be applied to the current board, not the board at the time of the original complaint. ATC argues, and Johnston does not dispute, that the ATC board as presently constituted is now independent and disinterested. Consistent with the reasoning of the Supreme Court of Delaware in the *Braddock* case, allowing Johnston to amend his complaint at this late stage is futile, and therefore unnecessary.[20]

---

[20]The *Braddock* rule is a matter of substantive Delaware law, which we must apply, and not a procedural rule. See In re CNET Networks, Inc. Shareholder Derivative Litig., No. C 06-03817WHA (N.D. Cal June 16, 2008) (*Braddock* v. *Zimmerman,* 906 A.2d 776, 784 [Del. 2006], recognized principle of *Kamen* v. *Kemper Fin. Servs., Inc.,* 500 U.S. 90, 96 [1996], for proposition that Delaware's demand doctrine is "a matter of substance").

Accordingly, the judgment of dismissal entered with prejudice is affirmed.

*So ordered.*