Curran, Dennis J., J.
INTRODUCTION
The plaintiffs Hugh F. Drummond, Thomas P. Kurtz, and Haomai K. Lin, shareholders of Boston Scientific Corporation (the “shareholders"), assert this derivative action against the defendants Lawrence C. Best, Mark C. Bartell, Jim Gilbert, William H. Kuche-man, Paul A. Laviolette, Kenneth J. Pucel, John E. Abele, Ursula M. Bums, Nancy-Ann Deparle, Joel L. Fleishman, Maiye Anne Fox, Ray J. Groves, Kristina M. Johnson, Ernest Mario, N.J. Nicholas, Jr., Pete M. Nicholas, John E. Pepper, Uwe E. Reinhardt, and Warren B. Rudman (collectively the “defendants”), current and former members of Boston Scientific’s Board of Directors, for the benefit of the nominal defendant Boston Scientific.[4] The shareholders contend the defendants violated their fiduciary duties by failing to *78 ensure Boston Scientific was operated in a diligent, honest, and prudent manner. The matter is currently before me on the defendants’ motion to dismiss. For the reasons set forth below, the motion to dismiss will be ALLOWED.
BACKGROUND
For purposes of this motion, I accept as true the factual allegations asserted in the Complaint. See Berkowitz v. President & Fellows of Harvard Coll., 58 Mass.App.Ct. 262, 270 (2003). I also consider other items appearing in the record and relevant exhibits. See Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) (“In evaluating a rule 12(b)(6) motion, [the court] take[s] into consideration ‘the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account’ ”) (Internal citations omitted).
Boston Scientific, based in Natick, Massachusetts, is one of the world’s largest developers, manufacturers, and marketers of medical devices. It operates seventeen manufacturing facilities and employs more than 20,000 individuals in fifty countries around the world.
On April 21, 2006, Boston Scientific acquired Guid-ant Corporation, including Guidant’s microwave surgical ablation product line.[5] At about the same time, Boston Scientific hired Elaine Bennett (currently known as Elaine George) as a St. Louis-based medical device sales manager. Within a few months, however, in early 2007, Boston Scientific terminated George’s employment.
Following her termination, in March 2007, George filed a qui tam whistleblower action against Boston Scientific (and Guidant) on behalf of the United States, alleging Boston Scientific violated the False Claims Act, 31 U.S.C. §3729, et seq.[6] More specifically, George’s complaint alleged that, following the acquisition of Guidant, Boston Scientific initiated a national sales campaign using improper sales techniques to entice hospitals and physicians to use its microwave surgical ablation products for off-label treatment of atrial fibrillation.[7] Her complaint further alleged that Boston Scientific encouraged hospitals to defraud Medicare by telling the hospitals to bill Medicare under the code for open-heart surgery when using its microwave surgical ablation system, even though the procedures performed with this technology were stand-alone, closed-chest procedures. This improper billing enabled hospitals to obtain up to a 355% higher reimbursement from Medicare than if they had billed the microwave surgical ablation procedures correctly as closed-chest procedures. George’s unredacted complaint was made public on December 12, 2009.[8]
Subsequently, in August 2009, the shareholders sent demands (the “demands”) to Boston Scientific’s Board of Directors (the “Board”), insisting the Board take action against numerous Boston Scientific officers and/or directors, including the named defendants, for what the shareholders deemed was their acquiescence in the improper sales practices alleged in George’s complaint. After receiving the demands, the Board referred the matter to its Special Committee on Legal Affairs (the “Special Committee”), which, at the time, was comprised of Board members Katherine Bartless, Ray Groves, and Warren Rudman. The Special Committee hired an outside law firm, Janis, Schuelke & Wechsler (the “Janis Law Firm”), to independently investigate the allegations in the demands and report its findings to the Special Committee.
On September 25, 2009, the Janis Law Firm sent a letter to the shareholders’ counsel informing them that it would be assisting the Special Committee “in investigating the claims and allegations made in the . . . [d]emand[s] . . .” It also advised the shareholders that they would be “notified promptly of any decision made by the [Special] Committee and approved by the Board.” The Janis Law Firm then commenced a ten-month investigation, which included, among other things, interviewing twenly-nine (29) current and former employees and consultants and reviewing thousands of pages of relevant documents.
Despite the ongoing investigation, on March 19, 2010, the shareholders filed suit against the defendants, alleging they “knew [Boston Scientific] was violating federal laws ... in connection with its off-label marketing campaign” and that they “willfully approved [Boston Scientific’s] illegal and improper conduct and failed to make a good faith effort to correct and prevent its recurrence.” The shareholders allege this misconduct resulted in damages to Boston Scientific “including, but not limited to, costs and expenses incurred in connection with the legal action taken against [it] and [the] further investigation of [its] unethical and illegal activities.”[9]
On April 26, 2010, all parties to this action acknowledged, by Joint Stipulation (paper #2), that: (1) “[bjecause Boston Scientific no longer own[ed] the business [in question] and [was] relying ... on the cooperation of the new owners and employees of the new owners, the investigation [was] not yet complete,” Joint .Stipulation, paragraph D; (2) the Janis Law Firm “expect[ed] that the investigation would be complete in time for a decision [to be made] relative to the demand[s] ... at a meeting of the [Board] ... on or about July 27, 2010,” Joint Stipulation, paragraph E; and (3) the Special Committee and its counsel “should be afforded additional time to complete the investigation.” Joint Stipulation, paragraph F.
Shortly after the Joint Stipulation was filed, on April 29, 2010, the Janis Law Firm wrote to the shareholders’ counsel indicating it had been “engaged in an extensive review and analysis of the allegations contained in the [djemand [ljetters.” In this letter, the Janis Law Firm requested that the shareholders provide “any evidence or information [they were aware of] *79 not contained in the [d]emand [¡letters that support the claims made . . . and that [they] believe[d] should be considered during [the] investigation.” The shareholders never responded to this request.
After completing its investigation, the Janis Law Firm reported its finding to the Special Committee through a written report (the “Janis Report”). After considering the Janis Report, the Special Committee concluded further litigation pursuing the shareholders’ demands was not in Boston Scientific’s best interests. The Special Committee reported its findings to the entire Board for consideration and, on July 26, 2010, the Board passed aresolution rejecting the demands and adopting the findings of the Special Committee. Immediately thereafter, on July 27, 2010, the Janis Law Firm informed the shareholders that it had completed its investigation and that the Board, with the exception of John E. Abele, Peter M. Nicholas, and N.J. Nicholas, Jr.,[10] on July 26, 2010, “[a]fterfull consideration and discussion of the matters raised in the [d]emand[s], . .. [the] investigation, . .. [the Janis] Report and the recommendation of the Special Committee, . . . resolved to reject the [d]emands.”
DISCUSSION
In support of the motion to dismiss, the defendants claim the shareholders have not met the prerequisites for asserting a derivative action under Delaware law. The defendants are correct and are entitled to dismissal of this action, as explained below.
I.Standard of Review
A shareholder derivative action seeks, on behalf of a few shareholders, to remedy management’s failure or refusal to redress a wrong, which the corporation has suffered. See Partnership Equities, Inc. v. Marten, 15 Mass.App.Ct. 42, 50-51 (1982). To proceed with a derivative action, a plaintiffs complaint must satisfy the requirements of Mass.R.Civ.P. 23.1, which demands “a higher standard than ordinaiy notice pleading.” Johnston v. Box, 453 Mass. 569, 578 (2009), citing In re Sonus Networks, Inc., Shareholder Litiation, 499 F.3d 47, 66 (1st Cir. 2007). According to this rule, “the complaint must plead ‘with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable auth-ority and the reasons for his failure to obtain the action or for not making the effort.’ ” Id., citing Mass.R.Civ.P. 23.1. Notwithstanding these pleading requirements, “the substantive requirements of the demand rule are governed by the law of the state of incorporation.” Id., citing Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991). In this case, Boston Scientific is incorporated in Delaware and thus, its law governs the resolution of the motion to dismiss.[11]
“A ‘cardinal precept’ of Delaware law ‘is that directors, rather than shareholders, manage the business and affairs of the corporation.’ ’’ Id., citing Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d, 244, 253 (Del. 1998). “The shareholder derivative action constitutes a narrow exception to this rule, and in limited circumstances ‘permits an individual shareholder to usurp control of the corporation in order to bring suit on behalf of the corporation against its officers and directors, as well as third parties.’ ” Id., quoting Risberg ex rel. Aspen Tech., Inc. v. McArdle, 529 F.Sup.2d 213, 219 (D.Mass. 2008), citing Kamen, 500 U.S. at 95-96.
II.The Shareholders’ Authority to Proceed
As an initial matter, the defendants persuasively argue that because the shareholders filed suit prematurely, i.e., before the Board had finished its investigation, they lack the authority to proceed with this action.
Under Delaware law, “[o]nce a shareholder makes a demand on the board, it must allow the board a reasonable time to investigate and respond to the claim prior to filing suit.” FLI Deep Marine LLC v. McKim, 2009 WL 1204363 at *4 (Del.Ch. 2009) (Noble, J.); see also In re Info USA, Inc., Shareholder Litig., 2008 WL 762482 at *1 (Del.Ch. 2008) (Chandler, J.).
Here, within a month of receiving the shareholders’ demands, the Board referred the matter to the Special Committee and the Special Committee hired the Janis Law Firm to conduct an independent investigation. The shareholders were informed of the investigation and advised they would be “notified promptly of any decision made by the [Special] Committee and approved by the Board.” Nevertheless, while the investigation was proceeding, before the Board had decided their demands, on March 19, 2010, the shareholders filed the current action.
By all appearances, the Board acted promptly and diligently in inquiring into the shareholders’ concerns. That it took six months to complete this internal investigation was not unreasonable. This is especially true where, as the shareholders well knew, the investigation was complicated by the fact that Boston Scientific no longer owned the microwave surgical ablation product line and thus, to complete its inquiry, the Board was dependent upon the Getinge Group for cooperation.
For these reasons, the defendants are entitled to dismissal based upon the shareholders’ premature filing. Even if I were to conclude, which I do not, that the shareholders have authority to proceed with this suit, as discussed below, the defendants are still entitled to dismissal under Delaware’s application of the business judgment rule.
III.The Business Judgment Rule
The defendants assert dismissal is also warranted because they are entitled to the business judgment rule’s protections. More specifically, according to the defendants, where, as is the case here, demand has been made and refused, a shareholder can only pro *80 ceed, if they demonstrate, with particularity, that a board’s decision not to litigate was grossly negligent. The defendants argue the shareholders have not demonstrated this. In answer, the shareholders state that the Board’s failure to provide any substantive information regarding its response and investigation creates a reasonable doubt as to whether its response and investigation were conducted with the requisite good faith and reasonableness. According to the shareholders, the business judgment rule does not protect arbitrary and capricious decisions and “the Board’s failure to provide even basic information about its conclusions indicates a lack of legitimacy that the [c]ourt should not endorse.” I disagree.
The requirements of Mass.R.Civ.P. 23.1 have resulted in two types of shareholder derivative suits— "demand refused cases" and “demand excused cases.” The present action is a demand refused case. Under these circumstances, “[w]here a demand has actually been made, the stockholder making the demand concedes the independence and disinterestedness of a majority of the board to respond.” Johnston, 453 Mass. at 575, quoting Rales v. Blasband, 634 A.2d 927, 935 n. 12 (Del. 1993). A shareholder in this situation may only proceed with suit by demonstrating the demand was wrongfully refused. Zapata Corp.v Maldonado, 430 A2d 779, 784 (Del. 1981) (“[A] board decision to cause a derivative suit to be dismissed as detrimental to the company, after demand has been made and refused, will be respected unless it was wrongful”), citing United Copper Sec. Co. v. Amalgamated Copper Co., 244 U.S. 262, 263-64 (1917).
In this case, the shareholders have wholly failed to meet this substantial burden. The Complaint identifies no facts indicating the Board’s decision not to pursue litigation was made in bad faith, based on an unreasonable investigation, or resulted from gross negligence. On the contrary, the record before me demonstrates that the Board acted swiftly to address the concerns identified in the shareholders’ demands and conducted a thorough investigation.
Soon after receiving the demands, the Board referred the matter to the Special Committee which, in turn, hired the Janis Law Firm to conduct an independent investigation. Only after an inquiry into the shareholders’ concerns did the Board determine further litigation was not in Boston Scientific’s best interests. There is nothing within the Complaint to remove this decision from the presumption of good faith afforded by the business judgment rule and the shareholders are not entitled to discovery to support their claims."[12]
ORDER
For the above reasons, it is hereby ORDERED that the defendants’ motion to dismiss will be ALLOWED; the complaint in each of these three consolidated cases shall be dismissed with prejudice; and judgment shall enter forthwith for the defendants in each such case.

Originally, this case involved three separate lawsuits: (1) Hugh F. Drummond v. Tobin et al., Civil Action No. 10-01069; (2) Thomas P. Kurtz v. Tobin et al., Civil Action No. 10-CV-1070; and (3) Haomai K. Lin v. Tobin et al., Civil Action No. 10-CV-1071. The complaint in each action was virtually identical and thus, all three cases were consolidated into the first-filed action, the Drummond suit, by Joint Stipulation (paper #2), dated April 26, 2010.

Microwave surgical ablation is a surgical procedure in which microwave energy is applied to different areas of the heart to “disconnect” the pathways along which disorganized electrical signals travel.

“Qui tarn” is the Latin abbreviation for “qui tarn pro domingo rege quam pro se ipso in hac parte sequitur,” which translates into “he who as well for the king as for himself sues in this matter.” A qui tarn action is an action “brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.” BLACK’S LAW DICTIONARY 1282 (8th ed. 2004).

The term “off-label” means the product, whether equipment or medication, is being used for purposes other than the uses the Food and Drug Administration has approved.

While George’s complaint was pending, Boston Scientific sold its Cardiac Surgery and Vascular Surgery divisions to the Getinge Group, after which Boston Scientific ceased to be involved in the microwave surgical ablation business. The sale to the Getinge Group was part of Boston Scientific’s plan to divest itself of “non-strategic” businesses. The microwave surgical ablation product line was included in the sale since, between 2004 and 2007, these products accounted for only 0.1% of Boston Scientific’s annual revenues.

he court notes that the shareholders do not allege that any one defendant was specifically involved in the improper sales practices; rather, they complain that the defendants breached their fiduciary duties by failing to prevent the improper practices.

These Board members were excused and did not participate in either the Board’s deliberations or its ultimate decision not to pursue litigation.

 :To survive a motion to dismiss under Delaware law, “a complaint must plead enough facts to plausibly suggest that the plaintiff will ultimately be entitled to the relief [sought].” Desimone v. Barrows, 924 A.2d 908, 929 (Del.Ch. 2007). All well-pled factual allegations are accepted as true and all reasonable inferences drawn from those allegations are viewed in the light most favorable to the plaintiff. Haber v. Bell, 465 A.2d 353, 357 (Del.Ch. 1983). The court may also consider “documents outside the pleadings ... as long as [they] are integral to the plaintiffs claim.” Sanders v. Devine, 1997 WL 599539 at *4 (Del.Ch. 1997) (Lamb, J.).

Because I concludes that the defendants are entitled to dismissal under the business judgment rule’s presumption of good faith, I need not address the defendants’ argument regarding Boston Scientific’s exculpatory charter provision.